**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

**JULIA DESOGUGUA, individually
And on behalf of others similarly situated,**

     **Plaintiff**

**v.**                             **CIVIL NO. 1:11-cv-0188-LO-JFA**

**WELLS FARGO BANK, N.A. d/b/a
WELLS FARGO HOME MORTGAGE,**

     **Defendants**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Julia Desogugua, individually and on behalf of others similarly situated, the Plaintiffs, by counsel, and for their Opposition to the Defendant's Motion to Dismiss respectfully submit this memorandum of law.

**OVERVIEW**

In Defendant's view, there is no scenario when it is obliged to send an ECOA adverse action notice to a consumer when it decides that a consumer will be refused a loan modification following a Trial Period Payment Plan under the Home Affordable Mortgage Program. The Plaintiff has filed a fact-intensive Complaint, above and beyond that which is required by Fed. R. Civ. P. 8, not only stating its claims but also putting the Defendant fully on notice of the allegations against it.  In support of its Motion to Dismiss, the Defendant simply ignores and rewrites the allegations and the law in order to argue that the Complaint fails to allege *prima facie* elements of the Equal Credit Opportunity Act (ECOA) class claim.

When Plaintiff filed this action, two issues had not been decided in the Eastern District of Virginia:[1]  (1) whether Defendant's failure to perform its obligations of a Trial Period Payment Plan was a garden-variety breach of contract claim or whether it arises only under agreements between lenders and servicers and the United States Treasury under the Troubled Asset Relief Program (TARP), thus leaving the Plaintiff without a private right of action to enforce it, and (2) whether an application for a loan modification or refinancing constituted an exception to provisions of the ECOA and Regulation B, in particular the adverse action notice provisions. Although the Plaintiff believes there are still strong legal and policy arguments in support of the breach of contract claim, she is nonetheless faced with a recent decision adverse to her position. Considering Judge Hudson's reasoning in *Bourdelais v. J.P. MorganChase Bank, N.A.*, that the plaintiff there failed to state a claim for breach of contract independent of HAMP, the Plaintiff will amend the Complaint to dismiss Count One separately under Rule 15(a)(1)(B).

With respect to Count Two, two recent Eastern District of Virginia cases are applicable. First, the *Bourdelais* decision is relevant inasmuch as the court found that the allegations of the complaint there stated a cause of action under the ECOA where the plaintiff alleged she had not timely received an adverse action notice from Chase, and the one she received late was deficient. *Bourdelais,* No. 3:10CV670-HEH, at 20.  There, the Court found that the plaintiff adequately stated a claim that the defendant bank had taken adverse action but had failed to provide her with a timely and adequate statement of its reasons.  *Id.* at 18-19.  The Court also reasoned that the allegation that the plaintiff was neither in default nor delinquent was sufficient to withstand

---

[1] *See Bourdelais v. J.P. MorganChase Bank, N.A.*, No. 3:10CV670-HEH, 2011 WL 1306311 (E.D.Va. April 1, 2011).  In *Bourdelais*, the Court was not persuaded by the cases on which Plaintiff relied to support the breach of contract claims.  *Id.* at n. 9, declining to follow *Durmic v. J.P. MorganChase Bank, N.A.,* No. 10-10380-RGS (D.Mass. Nov. 24, 2010) and *Bosque v. Wells Fargo Bank, N.A.,* No. 10-10311-FDS (D.Mass. Jan. 26, 2011).

dismissal, even if she became delinquent or in default at a later time. *Id*. at 19 (quoting *Davis v. CitiMortgage, Inc.*, No. 10-12136 (E.D. Mich. Mar. 11, 2011), "[t]he default status of a consumer is determined at the time the creditor takes action with respect to the consumer . . .") .

A second case involving an ECOA adverse action claim with respect to a HARP-related refinance is *Conley v. First Tennessee*, 1:10cv1247-TSE-JFA.  There, the defendant moved to dismiss based on several theories, including that the plaintiffs had not expressly pled that they had submitted a completed application and that they were not in default.  Following briefing on the motion to dismiss, the parties stipulated to these facts and the defendant withdrew its motion to dismiss.  In that case, a husband and wife applied for, and were denied, a refinance of their mortgage loan through the Home Affordable Refinance Program (HARP).  In their complaint, the plaintiffs alleged that their lender sent them an auto-generated denial that failed to state any reason for the denial other than the consumers were ineligible for the loan program.  The parties engaged in initial discovery, including roughly determining the size of the class.  With the assistance of a magistrate judge, the parties were able to resolve the case by compromise, which will be before Judge Ellis for Rule 23 preliminary approval on May 20, 2011.

The case before the Court now involves Plaintiff's application for mortgage modification through the Home Affordable Modification Program (HAMP) recommended by Wells Fargo. The HAMP program was developed pursuant to the Troubled Asset Relief Program (TARP) to help address what has become known as a "mortgage crisis." 12 U.S.C. § 5211; (Compl. ¶¶ 5, 20-25).  However, despite its special purpose, an application for loan modification is still an application for credit not legally different from other types of lending and refinancing under the Equal Credit Opportunity Act. Mortgage servicers and mortgage lenders, such as the Defendant, have failed to implement uniform policies and procedures to successfully handle HAMP, now

universally deemed a failure because of repeated facts exactly like this case.  Because lenders

such as the Defendant accepted federal funds as part of the "bank bailouts," they were required

to participate in the loan modification and refinancing programs such as HAMP but have

performed miserably.   (Compl. ¶¶ 8, 14-22).

     HAMP provides a refinancing alternative to homeowners who owe more than their home

is worth or have an exotic mortgage product (such as an interest only or payment option

adjustable rate mortgage) in order to "'maximize assistance for homeowners'" and "'minimize

foreclosures.'" (Comp. ¶ 22).

     Homeowners at risk of default but current on their mortgage payments, including Ms.

Desogugua, sought the assistance of their mortgage lender or servicer to avoid foreclosure.

(Compl. ¶¶ 23-30).  Whether a consumer receives a permanent loan modification depends on the

exchange of information and the consumer's compliance with every single term imposed by the

lender.  (Compl. ¶ 30).  Generally, a homeowner submits a hardship affidavit, provides income

verification documentation, and proof of occupancy and the servicer communicates either the

approval of the application or rationale for a denial.

     Often the exchange of information in only one way, with the lender asking repeatedly for

information to be supplied by the homeowner, who is left only with questions after the loan

modification is refused:  were the United States Treasury's policies and procedures implemented

properly; was the application processed correctly; and what was the basis for the denial? Both

the federal government and Commonwealth of Virginia have enacted protections for

homeowners because they think that a homeowner's questions should be answered if they are

denied credit.  It is in this environment, where banks have been bailed out and homeowners are

seeking financing options in order to continue making mortgage payments, that the Defendant argues it has no obligation under the ECOA.

**COMPLAINT ALLEGATIONS**

The Complaint in this case fully complies with Fed. R. Civ. P. 8, with 117 paragraphs supporting the individual and class claims for both counts.  Facts relevant to this motion and that are alleged in the Complaint are as follows:

1.  The Plaintiff is a consumer as defined by 15 U.S.C. §1681a(c), persons under Va. Code. Ann. §59.1-21.19 (renumbered at Va. Code Ann. 6.2-500 et seq.), and applicants under the Equal Credit Opportunity Act and the Virginia Equal Credit Opportunity Act. (Compl. ¶ 12).

2.  The Defendants, collectively Wells Fargo, operate as a single mortgage lender and servicer are separate entities consisting of a national bank and mortgage company, which are creditors under the Equal Credit Opportunity Act ("ECOA") and the Virginia Equal Credit Opportunity Act ("VECOA"). (Compl. ¶¶ 2, 13-17).

3.  In January of 2005, Plaintiff purchased her home for $421,000.00 with an interest-only, adjustable rate home mortgage from Wells Fargo.  (Compl. ¶¶ 36-37).

4.  Plaintiff's payments were $2,400.00 a month, which she consistently paid on time up through and including December of 2009 – the day Wells Fargo denied her application for a loan modification under HAMP.  (Compl. ¶ 38-39, 43-44).

5.  In the fall of 2009, Plaintiff experienced financial hardship occasioned by divorce, medical bills, caring for two elderly parents, as well as an impending rate adjustment on her mortgage.  (Compl. ¶ 40).

6.  On or about November 1, 2009, Plaintiff contacted Wells Fargo by phone for assistance, at which time the Wells Fargo representative suggested that Plaintiff apply for a modification under HAMP. (Compl. ¶ 42-43).

7.  The Wells Fargo representative requested detailed income and expense information over the phone in order to "pre-qualify" Plaintiff for a HAMP modification.  (Compl. ¶ 43). Wells Fargo informed Plaintiff she qualified for HAMP and would be receiving information in the mail.  (Compl. ¶ 43).

8.  On or about December 4, 2009, Plaintiff received, completed, and returned to Wells Fargo an application for a Trial Period Plan, which included documentation such as the signed Request for Modification Affidavit, income verification documents and a signed 4506-T Request for Tax Return form. (Compl. ¶ 46).

9. After submitting the application and all required documentation, Plaintiff received a document entitled "Home Affordable Modification Loan Trial Period (Step One of Two Step Documentation Process)," which stated that the trial period or TPP would commence in January 2010 and end in March 2010, during which time Plaintiff's mortgage payments would be $1,808.00.  (Compl. ¶ 47).  Plaintiff signed and returned to Wells Fargo the TPP form, another Form 4506-T, and other requested documentation prior to the January 1, 2010 deadline.  *Id.* Under the TPP, Plaintiff's monthly mortgage payments were set at $1,808.00, which payment was deducted automatically from her bank account each month after she returned the signed TPP.  (Compl. ¶ 52).  Wells Fargo specifically instructed Plaintiff in bolded writing, "**These payments should be sent instead of, not in addition to, your normal monthly mortgage payment**."  (Compl. ¶ 50).

10.  In the following months, Wells Fargo continued to automatically deduct the TPP $1,808.00 monthly mortgage payment from Plaintiff's account, while at the same time requesting documents it had lost or claimed it had not received from the Plaintiff.  (Compl. ¶ 53-59).   In April 2010, four months into the TPP, Wells Fargo notified Plaintiff that she had to resend the signed TPP because they could not find their signed copy.  (Compl. ¶ 56).

11.  Plaintiff responded by resending the documents requested by Wells Fargo, including another signed TPP, which she had already signed and sent to Wells Fargo prior to January 1, 2010.  (Compl. ¶ 57)

12.  Defendant denied the Plaintiff's application for a loan, which constituted an adverse action. (Compl. ¶ 59).  The Denial sent to Plaintiff stated that Wells Fargo was "unable to adjust the terms of [her] mortgage . . ." specifically:

> We are unable to offer you a Home Affordable Modification because you did not provide us with the documents we requested.  A notice which listed the specific documents and the time frame required to provide them sent you more than 30 days ago.  Any trial period payments you have made will be applied to your loan in accordance with your current loan documents.

(Compl. ¶60).

13. Upon receiving this letter, the Plaintiff called Wells Fargo to find out the specific documentation it considered to be missing, which information Wells Fargo stated was a hardship letter.  Plaintiff immediately forwarded a hardship letter to Wells Fargo.  (Compl. ¶ 61-62).

14.  In May of 2010, Wells Fargo contacted Plaintiff again with a letter that stated she "may be eligible for the Home Affordable Modification Program . . ." and requested a new application.  (Compl. ¶62).  She promptly submitted a new application.  (Compl. ¶ 63).

15.  Despite the fact that Plaintiff paid her mortgage payments on time and in full every month, including the amount required under the TPP "instead of and not addition to" her prior

monthly mortgage payment amount, upon rejecting her application, Wells Fargo considered her to be in default and in danger of foreclosure.  (Compl. ¶¶ 64-68).

16.   Wells Fargo refused to accept any payment in any amount other than the full amount they considered to be in arrears and foreclosed on her home on August 27, 2010.  (Compl. ¶¶ 69-76).

17.   Despite the fact that Wells Fargo foreclosed on Plaintiff's home, it still is sending written invitations to apply for HAMP.  (Compl. ¶¶ 78-79).

18.   Plaintiff and the class are entitled to declaratory and injunctive relief under the ECOA and damages under the VECOA.  (Compl. ¶¶ 106).  Even if it could be found that the Plaintiff had not submitted a completed application, Wells Fargo was still under an ECOA and VECOA obligation to send an appropriate notice.

## Standard of Review

In order for the Defendant to prevail in its motion, it must demonstrate that the Plaintiffs have supplied no facts which, taken as true, facially state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007).  While Fed. R. Civ. P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief," the statement must contain "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal,* ____U.S.____, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly,* 550 U.S. at 555)(internal citation omitted). In order to determine whether the Defendant prevails, it must overcome the considerable hurdle in "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). The Rule requires that the facts alleged by the Plaintiff are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations.'" *White v. Jones*, No. 1:10CV799, 2010 WL 3395695, at \*2 (E.D. Va. Aug. 23, 2010) *aff'd,* No. 10-7283, 2010 WL 5439712 (4th Cir. Dec. 29, 2010)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

In an effort to prevent complaints from moving forward merely by setting forth legal conclusions or the bald elements of claims, the Supreme Court has clarified the survival standard for claims: they must actually be supported by factual allegations contained in the complaint. *Id.* Rather than altering the pleading standard in Rule 8, the Court held that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  The Court expressly rejected a heightened pleading standard and explained that it was not requiring a particularized complaint, just one that alleged facts which would entitle the Plaintiff to relief. *Twombley,* 550 U.S. at 1973 & n.14*; accord Erickson v. Pardus,* 551 U.S. 89, 93 (2007) and *Iqbal,* 129 S.Ct. at 1950.  Plaintiffs have alleged more than the facts necessary to state a claim for relief under 15 U.S.C.§1691(d).

## ARGUMENT

The Defendant sets forth three erroneous, puzzling arguments in support of its motion to dismiss.  In order to arrive at its conclusions, Defendant fails to acknowledge the relevant allegations in the Complaint required under Fed. R. Civ. P. 8.  Instead, Defendant reforms the extensive and well-developed factual allegations into one anemic paragraph devoid of the facts actually pled, which support the elements of Plaintiff's claim.  Defendant uses its alternative

version of the facts to argue that the Complaint must be dismissed because (1) an application for

a loan modification is not an application for credit under the ECOA, (2) that adverse action

notice is not required where a consumer is in default, and (3) that Plaintiff has failed to allege she

submitted a completed application.

Under Rule 12(b)(6), the Defendant is bound by the factual allegations of the Complaint.

Instead of filing its Answer, it moved to dismiss.  Instead of applying the Rule 12(b)(6) standard,

Defendant supplies its own facts and argues its defenses in contravention of *Ashcroft v. Iqbal,*

129 S.Ct. at 1949.  The Court must accept all well-pled facts as true, and construe the facts in the

light most favorable to the Plaintiff where the Defendant is challenging the legal sufficiency of

the Complaint.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir.

2009).  Dismissals are disfavored.  *Fayetteville Invs. v. Comm'n Builders, Inc.*, 936 F.2d 1462,

1471 (4th Cir. 1991).  In this case, the Defendant hasn't attacked the sufficiency of the

Complaint, but has expressly moved to dismiss on its version of the facts, failed to accurately

defer to the allegations contained in the Complaint, and argued non-existent elements it believes

are missing from Plaintiff's *prima facie* ECOA and VECOA claims.

A.      **The Complaint Alleges a Plausible Claim under the ECOA.**

1.      **The Equal Credit Opportunity Act is unambiguous as it is written.**

The first step in analyzing whether the Plaintiffs have set forth facts that state a *prima*

*facie* case under the ECOA is to look to the plain language of the statute itself.  *Robinson v. Shell*

*Oil Co.*, 519 U.S. 337 (1997). The cause of action in the Complaint is based on Wells Fargo's

failure to provide an adequate adverse action notice in violation of §1691(d) of the ECOA, which

provides:

(d)(1)  Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application. (2)  Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by-- (A)  providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or (B)  giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the persons or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

The statute is clear on its face.  To prevail on ECOA claim under §1691(d), the Plaintiffs must prove the following elements: (1) Wells Fargo is a creditor, (2) Plaintiff is a credit applicant, (3) Wells Fargo took adverse action with respect to Plaintiff's credit application, and (4) Wells Fargo failed to provide Plaintiff with an ECOA-compliant statement of reasons for its adverse action. *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ. 13158, 2007 WL 2363656, at *2 (S.D.N.Y. Aug. 17, 2007) (citing *Madrigal v. Kline Oldsmobile, Inc.,* 423 F.3d 819, 822 (8th Cir.2005)); *accord Diaz v. Va. Hous. Dev. Auth.*, 117 F.Supp.2d 500, 504 (E.D. Va. 2000)(explaining that there is no Fourth Circuit authority directly on point, thus the analysis begins with the plain language of the statute, citing 15 U.S.C. §1691(d)(1)-(3); Va. Code Ann. § 59.1-21.21:1(d)(1)-(3); *see* 12 C.F.R. § 202.9(a)(1)-(2)).

In this case, the Plaintiff alleged each element with supporting facts. Although nowhere in §1691(d) is it mentioned that a Plaintiff must allege that he or she is current on a mortgage in order to be entitled to the adverse action notice required by the statute, the Plaintiff nonetheless alleged that she paid her mortgage in full every month, up to and including at the time the Defendant was required to provide the Plaintiff with an adverse action notice.  (Compl. ¶ 38-39, 43-44).

I.      **Completed Application**

   A.      **Plaintiff alleged she submitted a completed application**

   Defendant argues that "To state a cause of action for a procedural violation of the ECOA,

a plaintiff must demonstrate that she submitted a complete application for credit and 'the

defendant(s) denied or terminated the plaintiff's credit and failed to provide proper written notice

of the adverse action.'"  (Def.'s Mem. in Supp. Mot. Dismiss at 23)(Docket #15).  Defendant has

stated its version of the facts, which are not the facts that the Plaintiff alleged in the Complaint.

Defendant states that Plaintiff has not alleged a completed application, that Wells Fargo

considered it a completed application, or any new facts regarding whether her subsequent and

successive applications were complete.  *Id.* at 24.

   The Complaint plainly alleges that Plaintiffs submitted a completed credit application.

(Compl. ¶¶ 43, 46).  In fact, it could not be more clear: "Ms. Desogugua forwarded her

completed application to Wells Fargo with the requested documentation," which is sufficient to

withstand dismissal.  (Compl. ¶46).

   That there were successive, multiple requests for more documentation by Wells Fargo,

which it ignored or lost, is immaterial to stating a *prima facie* cause of action under the ECOA.

Defendant finds its smoking gun in Exhibit 8 attached to the Complaint, but completely ignores

the totality of the allegations of the Complaint.  (Def.'s Mem. Support Mot. Dismiss at 24);

(Compl¶¶ 26-35).  The Plaintiff alleged that she utterly complied with every single requirement

imposed on her by the Defendants, including sending the same information to Wells Fargo

multiple times. (Compl. ¶¶ 38-39, 42-47, 49-59).  The overarching theme that emerges from the

Complaint is that the Defendant capriciously led Plaintiff down a path to ruin by enticing her into

a TPP reduced payment only to accelerate the loan once it denied her for the modification

without providing an accurate ECOA notice explaining the reasons therefore.  The allegations of

the Complaint make clear that reason for denial supplied by the Defendant in the adverse action

notice that it did send, that the Plaintiff failed to submit all requested documents, is a false

reason.  (Compl. ¶¶ 56-57, 59-61, 69- 74).  What Defendant did with the documents and

information supplied by the Defendant is part of the mystery the Plaintiff seeks to unlock and she

is entitled to know the true reasons under the law.

     **B.**     **Because Defendant sent a denial, though legally inadequate, Plaintiff's application is deemed to have been complete.**

Even if the application was somehow deficient, it is properly pled at this stage of

litigation because Wells Fargo acted on the Plaintiff's application. When a creditor makes a

decision to decline a request for credit based on information that it received through an inquiry

from a prospective borrower, that inquiry constitutes an "application" for credit for purposes of

ECOA.  *Stoyanovich,* 2007 WL 2363656, at *5 (quoting *Treadway v. Gateway Chevrolet*

*Oldsmobile, Inc.,* 362 F.3d 971, 981 n. 9 (7th Cir. 2004) "[E]ven if it was not an application in

the beginning, when [creditor] declined [applicant's] request, it became an application and

creditor was required to comply with [ECOA's notice provisions].").  Therefore, even if the

Court were to find that the allegation in paragraph 46 of the Complaint was somehow inadequate

to withstand dismissal, the Defendant's action on the Plaintiff's application – evidenced by the

inadequate notice it sent her – demonstrates it considered her application to be complete.

Defendant does not dispute that it sent Plaintiff an adverse action notice, therefore any

after-manufactured argument that Plaintiff did not submit a completed application is completely

undermined by the fact that Defendant treated the request for a mortgage modification as an

application under the ECOA.  Plaintiff's complaint is that the notice is inadequate because it fails

to state the actual reason(s) that Defendant declined to extend a loan modification.

A very recent case in the Northern District of Illinois applied *Treadway* and further discussed this particular type of ECOA adverse action triggered by a HAMP application. *Boyd v. U.S. Bank, N.A.,* No. 1:10CV3367, at 13, 114-16 (N.D. Ill. April 12, 2011)(docket #68)(finding that even a phone call suffices as a completed application under 12 C.F.R. § 202.2(f) and Supplemental Directive 09-01, at least at the motion to dismiss stage).   There, the court's decision focused on the substance of the application process.   The method of obtaining the application was not the dispositive question but, rather, was the information gathered by the lender sufficient to act on the application? In this case, the answer is obvious that the Plaintiff provided information practically *ad infinitum*, sufficient for the lender to act on that information by sending a notice that it was refusing to modify the loan.

**C.   Defendant is required to send an ECOA adverse action notice regardless of whether the application was complete**.

The Plaintiff alleged each element of an ECOA claim with supporting facts. Despite Defendant's characterization of the TPP as part of a continuing, dynamic, virtually unending, unknowable application process (Compl. ¶¶ 31, 33-35, 43, 45-52), and that the Complaint sufficiently alleges that she a completed an application, (Compl. ¶ 46), the Defendant was still required to send an ECOA notice.   Even if Wells Fargo clings to its claim that the Plaintiff never completed an application, the ECOA requires creditors to provide consumers with written notice that their applications were incomplete and instructions on how to cure deficiencies.   (Regulation B, 12 C.F.R. §202.9(a)(1)(ii), §202.9(c)(1)(i) & (ii), §202.9(c)(2)).   Specifically, with respect to

> **(c)   Incomplete applications** – (1) Notice alternatives.  Within 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either:  (i) Of action taken, in accordance with paragraph (a) of this section; or (ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section.  (2) Notice of incompleteness.  If additional in formation is needed from an applicant, the creditor shall send a written notice to the applicant . . . The

> creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period.  If the applicant supplies the requested information within the designated time period, the creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this section.

This provision of the ECOA makes it even more obvious that a creditor cannot shirk its notice responsibility by doing what Wells Fargo does:  set up an unending cycle of requests for documentation to avoid considering a consumer's credit application to be complete, but either way avoiding communicating the real reasons it is denying the loan. The Complaint adequately sets out the facts putting the Defendant on notice that it is accused of failing to provide adequate, true and complete notices to consumers to whom it denied modifications despite their compliance and completion of applications and eligibility for the HAMP program. The Complaint adequately alleges that the Plaintiff was facing financial hardship, but she was still current on her mortgage until she entered the TPP whereby Wells Fargo instructed her to make a lower monthly mortgage payment instead of, and not in addition to, her previous monthly mortgage payment.

## II.    Plaintiff alleged that she was not in default.

### A.  There is no requirement that a Plaintiff plead she was not in default in order to state an ECOA claim.

Though it is not a requirement to state a claim for relief under the ECOA, Plaintiff alleged she was neither in default nor delinquent on her mortgage when she applied for a loan modification with Wells Fargo.  (Compl. ¶ 38-39, 43-44).  Wells Fargo accepted the application, processed the application, denied the application, and sent to the Plaintiff a deficient adverse action notice in contravention of the ECOA regulations.  (Compl. ¶¶ 46-47, 50, 52).  Despite the fact that Wells Fargo sent an inadequate notice to the Plaintiff, it now argues that no adverse action notice is required when a consumer pays under a TPP because the fact that a consumer

pays under a TPP means that the consumer is immediately, *de facto*, in default.  (Def.'s Mem. in

Supp. Mot. Dismiss at 23).  Because default status triggers one of the exceptions to the definition

of adverse action, this argument looks to lenders like a promising way to avoid their ECOA

notice duty.   In this case, as demonstrated already, this argument is simply inapplicable.

 The possibility that Wells Fargo might assert a defense or exemption from the ECOA's

adverse action notice requirements because of alleged pre-application default is not a matter that

can be resolved at this stage of the litigation or upon the face of the complaint.  "Lack of

Default" is not an express element of a claim under either 15 U.S.C. §1681(d) or the VECOA,

now at Va. Code. Ann. §§ 6.2-502, 503 (2010).[2]

 It is truly notable that Defendant argues that the Plaintiff was in default on the date of her

first Trial Payment Plan.  (Def.'s Mot. Dismiss at 25).  The Defendant instructed the Plaintiff to

make a reduced payment under the terms of the TPP, while at the same time failing to notify her

that it considered the first TPP payment to be a default under the original note.  *Id.*  That

admission, that the lender considers the consumer's payments under a TPP to be default in order

to avoid making accurate adverse action notices under the ECOA and to accelerate the loan into

foreclosure when it ultimately denies the modification, is truly a stunning argument.   Defendant

relies on *Davis v. CitiMortgage* to support its position.  2011 WL 891209, at *2.  In *Davis,* the

court dismissed a plaintiff's ECOA claim despite allegations in the Complaint that the plaintiff

was current on her mortgage payments.  In contrast, in the Eastern District of Virginia, J.

Hudson's recent decision held that an ECOA claim was properly pled in *Bourdelais,* which also

---

[2] VECOA at Va. Code Ann. §6.2-500, et seq. (October 1, 2010) was previously codified at Va. Code Ann. §59.1-21.20 et seq.  The Plaintiffs hereinafter will refer to the old code numbers for the purpose of this memo only, especially since all the cases relied on refer to the code sections as they were prior to the October 2010.  The renumbering has not affected the substance of the code sections cited.

took into consideration the ruling in *Davis*.  Defendant argues *Bourdelais* was wrongly decided

on the ECOA issue (but not the private right of action in the HAMP claims).  In *Davis*, the court

dismissed a borrower's claim because it found that no adverse action notice was required when a

borrower was in default at the time the lender took action.  *Davis*, 2011 WL 891209, at *2.

Defendant reveals that after it tricks a borrower into making reduced payments under a TPP, the

lender will consider the loan to be default, thus it won't have to send out any notices under

Regulation B exceptions because the borrower was in default on the original loan.  The reasoning

supporting the dismissal in the one-and-a-half page *Davis* decision does not address the totality

of the facts in the case here.  In this case, Wells Fargo's documents do inform the borrower on

the one hand that a TPP is not a permanent modification of the original loan, yet it nonetheless

instructed her to make the reduced payments as a prerequisite to permanent loan modification,

that the TPP payments were in lieu of an not in addition to, the existing loan payments.

At a minimum, whether the Defendant properly treated payments made under the TPP as

a default is not properly before the court on a Motion to Dismiss.  Whether the Plaintiff was in

default as Defendant argues is a fact question, or a mixed question of law and fact, not

appropriately decided under Rule 12(b)(6), but more properly at summary judgment or trial.

### III.    Wells Fargo's adverse action notice was untrue and inadequate under the ECOA.

In this case, the Plaintiff alleged many actual facts rather than conclusory allegations or a

mere recitation of the elements of the claim, taking the Complaint out of the realm of speculation

with concrete allegations that she applied for a mortgage loan modification from the Defendant ,

which the Defendant processed pursuant to HAMP.  (Compl. ¶¶  36 -74).  The Defendant sent an

adverse action notice.  (Compl. ¶¶ 59-60).  However, as the Plaintiff alleged with specificity, the

notice was facially, legally insufficient under the ECOA and its regulations.  (Compl. ¶¶ 104,

106-109).  Thus, the Plaintiff alleged that she is a consumer who filed an application for a loan from Wells Fargo, a creditor; that Wells Fargo denied the loan, an adverse action; and that the notice of the adverse action provided by Wells Fargo to the Plaintiffs was inadequate under the ECOA and VECOA, therefore creating a cause of action under §1691(d).  For each element of the claim, the Plaintiffs supplied facts in the complaint and directly related these facts to the requirements of the statute.  This alone is sufficient under both Rule 8(a)(2) and the case law to state a plausible claim that entitles the Plaintiff to relief.  *Iqbal*, 129 S.Ct. at 1950.

Not only is the statute clear that the ECOA is violated when a creditor fails to send to a consumer adequate notice of an adverse action resulting from the consumer's application for credit, it mandates that creditors notify applicants the specific reasons the action was taken.  *Id*. at 504. (citing 12 C.F.R. 202.9(a)(1)-(2), which details the two ways a creditor may discharge its duty to provide an adverse action notice to the consumer).  The ECOA broadly defines "adverse action" to mean the denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or the terms requested.  *Id.* The Federal Reserve Board promulgated regulations that further define "adverse action," specifically excluding certain transactions from the definition of adverse action, none of which are present in this case.  *See* 12 C.F.R. 202.2(c); *see generally*, 12 C.F.R. 202.1-17 (containing Regulation B, the regulations pertaining to the duty of creditors under the ECOA and the Consumer Credit Protection Act 15 U.S.C. §1601, *et seq*.).   In this case, the Defendant cites no authority that suggests there is an ambiguity, either in the statute or in the regulations, related to the requirement that a creditor send a specific, adequate adverse action notice when the extension of credit is a refinance of a mortgage, or even if it is the extension of credit under the HAMP.

Section 1691(b) and Regulation B have been successfully utilized, interpreted and applied in the courts since 1976.[3]

Aside from *Davis*, Defendant has cited no case anywhere that has ever required a heightened pleading for a § 1691(d) claim.[4]  Even so, the evidence will demonstrate that the Plaintiff was not in default when she completed the application process required by Wells Fargo.

Finally, in a footnote, the Defendant argues that Plaintiff cannot enforce both VECOA and ECOA claims, which is totally false.  (Def.'s Mem. Support Mot. Dismiss at 22, n. 16).  The Plaintiff has alleged violations of both the VECOA and ECOA, but has demanded money damages only under the VECOA and injunctive relief under the ECOA.  Under the VECOA, a Plaintiff must elect whether he or she will seek recovery of monetary damages under the State or

---

[3] ECOA was enacted in 1974 and amended in 1976 to include the adverse action notice provision of § 1691(d) "as a strong, necessary adjunct to the antidiscrimination purpose of the legislation." *Williams v. MBNA Am. Bank, N.A.*, 538 F.Supp.2d 1015 (E.D. Mich. 2008)(quoting *Fischl v. Gen'l Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983).

[4] To find that a Plaintiff must plead with heightened specificity might require pleading each subsection either positively or negatively:
(c) Adverse action.  (1) The term means: (i) A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered; (ii) A termination of an account or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts; or (iii) A refusal to increase the amount of credit available to an applicant who has made an application for an increase.
(2) The term does not include: (i) A change in the terms of an account expressly agreed to by an applicant. (ii) Any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account; (iii) A refusal or failure to authorize an account transaction at point of sale or loan, except when the refusal is a termination or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts, or when the refusal is a denial of an application for an increase in the amount of credit available under the account;
(iv) A refusal to extend credit because applicable law prohibits the creditor from extending the credit requested; or (v) A refusal to extend credit because the creditor does not offer the type of credit or credit plan requested. (3) An action that falls within the definition of both paragraphs (c)(1) and (c)(2) of this section is governed by paragraph (c)(2) of this section.
12 C.F.R. §202.2

Federal statutes.  Va. Code Ann. §6.2-512.  Accordingly, the substantive text of the Complaint

under the Federal ECOA count, asserts only a claim for "declaratory and injunctive relief."

(Compl. ¶ 116).  Plaintiff seeks no money damages for violation of the ECOA.  (Compl. ¶¶ 115-

116).  The Plaintiff does, however, seek money damages, including punitive damages, for

violation of the VECOA under Va. Code Ann. § 6.2-512, where both equitable and legal

remedies are available.  (Compl. ¶ 115).

> Under "the ECOA Class Claim," the Plaintiff states:
>
> Ms. Desogugua and the putative class are entitled to declaratory judgment and
> injunctive relief requiring the Defendants' compliance with the ECOA pursuant to
> 15 U.S.C. § 1691e.  (Compl. ¶ 116).
>
> Under "the VECOA Class Claim," the Plaintiff states:
>
> The Defendants are liable to Ms. Desogugua and the putative class for punitive
> damages of $10,000.00 per violation pursuant to Virginia Code § 59.1-12.23.
> (Compl. ¶ 115).

Notwithstanding the clarity of these allegations, Wells Fargo still attempts to challenge it,

but only in a footnote and without any citation or argument in support of its note.  Seeking

injunctive relief available under one statute and money damages under another does not amount

to the seeking of double recovery under the VECOA or the election of remedies doctrine.  Va.

Code Ann. §6.2-512.  In fact, the VECOA expressly states:

> Where the same act or omission constitutes a violation of this
> chapter and of applicable federal law, a person aggrieved by such
> conduct may bring a legal action to recover monetary damages
> either under this chapter or under federal law, but not both. This
> election of remedies shall not apply to court actions in which the
> relief sought does not include monetary damages or to
> administrative actions.

Va. Code Ann. §6.2-512 (formerly Va. Code Ann. § 59.1-21-.28).  The Plaintiff seeks remedies authorized under the VECOA, and thus to the extent that the footnote is deemed to be part of Defendant's motion to dismiss based on this argument, it should be denied.

## CONCLUSION

For the reasons articulated in this Opposition, the Plaintiff respectfully requests that the Defendant's Motion to Dismiss be denied in its entirety.  If the court determines that the Complaint lacks particularity required over and above that required by Rule 8, the Plaintiffs move the court for leave to file an amended complaint.

Respectfully submitted,


JULIA DESOGUGUA,


_____/s/_____
Susan M. Rotkis
VSB 40693
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
srotkis@clalegal.com

## *CERTIFICATE OF SERVICE*

I certify that on May 11, 2011, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

**Terry Catherine Frank**
Kaufman & Canoles PC (Richmond)
1051 E Cary St
3 James Center, 12th Fl
Richmond, VA 23219
804-771-5745
804-771-5777 (fax)
tcfrank@kaufcan.com

**John Bradley Reaves**
Kaufman & Canoles PC (Norfolk)
150 W Main St
Suite 2100
PO Box 3037
Norfolk, VA 23514
(757) 624-3000
(757) 624-3169 (fax)
jbreaves@kaufcan.com

**Hunter Wilmer Sims, Jr.**
Kaufman & Canoles PC
150 W Main St
PO Box 3037
Norfolk, VA 23510
(757) 624-3000
hwsims@kaufcan.com

_____/s/_____
Susan M. Rotkis
VSB 40693
Attorney for Plaintiff
CONSUMER LITIGATION ASSOC., P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
srotkis@clalegal.com