**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**JULIA DESOGUGUA, individually**
**And on behalf of others similarly situated,**

    **Plaintiff**

**v.**                               **CIVIL NO. 1:11-cv-0188-LO-JFA**

**WELLS FARGO BANK, N.A. d/b/a**
**WELLS FARGO HOME MORTGAGE,**

    **Defendants**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW, Julia Desogugua, individually and on behalf of others similarly situated,

the Plaintiffs, by counsel, and for her Opposition to the Defendant's Motion to Dismiss

respectfully submits this memorandum of law.

**OVERVIEW**

The Amended Complaint alleges a class claim – Count One - alleging that Wells Fargo

violated the Federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, et seq., and its

Virginia equivalent by failing to provide her and a class of comparable consumers (persons who

applied for a loan modification when they were not at that time in default on their loan) a lawful

explanation of why their applications for the loan modification were rejected.   15 U.S.C. ¶

1691(d).  Putative class members – Virginia homeowners at risk of default but <u>current on their</u>

<u>mortgage payments,</u> such as Ms. Desogugua - sought the assistance of their mortgage lender or

servicer to avoid foreclosure.  (Am. Compl. ¶¶ 23-30). Wells Fargo asserts that no such claim

can lie – that consumers such as Ms. Desogugua are divested of such rights to an adverse action

1

notice for various reasons.  In Defendant's view, there is no scenario when it is obliged to send

an ECOA adverse action notice to a consumer when it decides that a consumer will be refused a

loan modification. The identical arguments were recently rejected in a comprehensive decision in

this District on all fours with the present case.  *Bourdelais v. J.P. Morgan Chase*, 3:10-CV-670-

HEH, 2011 WL 1306311 (E.D. Va. Apr. 1, 2011).

The case before the Court involves Plaintiff's application for mortgage modification

through the Home Affordable Modification Program (HAMP) recommended and initiated by

Wells Fargo. The HAMP program was developed pursuant to the Troubled Asset Relief Program

(TARP) to help address what has become known as a "mortgage crisis." 12 U.S.C. § 5211; (Am.

Compl. ¶¶ 5, 20-25).  Despite the economic forces that drove the creation of HAMP, an

application for loan modification under HAMP is still an application for credit not legally

different from other types of lending and refinancing.  However, foreclosure rescue mill

attorneys and others have sought unsuccessfully to assert a private cause of action for a mortgage

servicer's refusal to comply with the provisions of the HAMP program.  HAMP does not provide

for a private cause of action – it is enforced if at all by the United States Department of Treasury.

But that reality is immaterial to the present controversy.  Plaintiff prosecutes two simple

state law claims, on an individual basis, based not on HAMP, but instead on Virginia common

law and the terms of her written mortgage documents.  Just as with the ECOA/VECOA claim,

Wells Fargo is aware that its opposition to such claims and attempts to muddle "HAMP private

cause of action" decisions and defenses has been recently rejected in this District by our Chief

Judge.

2

## COMPLAINT ALLEGATIONS

The Complaint in this case fully complies with Fed. R. Civ. P. 8, with 117 paragraphs supporting the individual and class claims for both counts.  Facts relevant to this motion and that are alleged in the Complaint are as follows:

1.  The Plaintiff is a consumer as defined by 15 U.S.C. §1681a(c), persons under Va. Code. Ann. §59.1-21.19 (renumbered at Va. Code Ann. §§ 6.2-500 et seq.), and applicants under the Equal Credit Opportunity Act and the Virginia Equal Credit Opportunity Act. (Am. Compl. ¶ 12).

2.  The Defendants, collectively Wells Fargo, operate as a single mortgage lender and servicer are separate entities consisting of a national bank and mortgage company, which are creditors under the Equal Credit Opportunity Act ("ECOA") and the Virginia Equal Credit Opportunity Act ("VECOA"). (Am. Compl. ¶¶ 2, 13-17).

3.  In January of 2005, Plaintiff purchased her home for $421,000.00 with an interest-only, adjustable rate home mortgage from Wells Fargo.  (Am. Compl. ¶¶ 36-37).

4.  Plaintiff's payments were $2,400.00 a month, which she consistently paid on time up through and including December of 2009 – the day Wells Fargo denied her application for a loan modification under HAMP.  (Am. Compl. ¶ 38-40, 43-44).

5.  In the fall of 2009, Plaintiff experienced financial hardship occasioned by divorce, medical bills, caring for two elderly parents, as well as an impending rate adjustment on her mortgage.  (Am. Compl. ¶ 41).

6.  On or about November 1, 2009, Plaintiff contacted Wells Fargo by phone for assistance because she was concerned that her mortgage payment was about to rise due to a rate adjustment, at which time the Wells Fargo representative suggested that Plaintiff apply for a

modification under HAMP. (Am. Compl. ¶ 42-43).

7.  The Wells Fargo representative requested detailed income and expense information over the phone in order to "pre-qualify" Plaintiff for a HAMP modification.  (Am. Compl. ¶ 43-44).  Wells Fargo informed Plaintiff she qualified for HAMP and would be receiving information in the mail.  (Am. Compl. ¶ 43-44).

8.  On or about December 4, 2009, Plaintiff received, completed, and returned to Wells Fargo an application for a Trial Period Plan, which included documentation such as the signed Request for Modification Affidavit, income verification documents and a signed 4506-T Request for Tax Return form. (Am. Compl. ¶¶ 46-47).

9.  After submitting the application and all required documentation, Plaintiff received a document entitled "Home Affordable Modification Loan Trial Period (Step One of Two Step Documentation Process)," which stated that the trial period or TPP would commence in January 2010 and end in March 2010, during which time Plaintiff's mortgage payments would be $1,808.00.  (Am. Compl. ¶¶ 47-49).  Plaintiff signed and returned to Wells Fargo the TPP form, another Form 4506-T, and other requested documentation prior to the January 1, 2010 deadline. *Id.*  Under the TPP, Plaintiff's monthly mortgage payments were set at $1,808.00, which payment was deducted automatically from her bank account each month after she returned the signed TPP.  (Am. Compl. ¶ 52).  Wells Fargo specifically instructed Plaintiff in bolded writing, "**These payments should be sent instead of, not in addition to, your normal monthly mortgage payment**."  (Am. Compl. ¶ 51).

10.  In the following months, Wells Fargo continued to automatically deduct the TPP $1,808.00 monthly mortgage payment from Plaintiff's account, while at the same time requesting documents it had lost or claimed it had not received from the Plaintiff.  (Am. Compl.

¶ 53-59).   In April 2010, four months into the TPP, Wells Fargo notified Plaintiff that she had to

resend the signed TPP because they could not find their signed copy.  (Am. Compl. ¶ 56).

      11.  Plaintiff responded by resending the documents requested by Wells Fargo, including

another signed TPP, which she had already signed and sent to Wells Fargo prior to January 1,

2010.  (Am. Compl. ¶ 57)

      12.  Defendant denied the Plaintiff's application for a loan, which constituted an adverse

action. (Am. Compl. ¶ 59).  The Denial sent to Plaintiff stated that Wells Fargo was "unable to

adjust the terms of [her] mortgage . . ." specifically:

> We are unable to offer you a Home Affordable Modification because you did not
> provide us with the documents we requested.  A notice which listed the specific
> documents and the time frame required to provide them sent you more than 30
> days ago.  Any trial period payments you have made will be applied to your loan
> in accordance with your current loan documents.

(Am. Compl. ¶¶ 60-61).

      13. Upon receiving this letter, the Plaintiff called Wells Fargo to find out the specific

documentation it considered to be missing, which information Wells Fargo stated was a hardship

letter.  Plaintiff immediately forwarded a hardship letter to Wells Fargo.  (Am. Compl. ¶ 61-62).

      14.  In May of 2010, Wells Fargo contacted Plaintiff again with a letter that stated she

"may be eligible for the Home Affordable Modification Program . . ." and requested a new

application.  (Am. Compl. ¶62).  She promptly submitted a new application.  (Am. Compl. ¶ 63).

      15.  Despite the fact that Plaintiff paid her mortgage payments on time and in full

every month, including the amount required under the TPP "instead of and not addition to" her

prior monthly mortgage payment amount, upon rejecting her application, Wells Fargo considered

her to be in default and in danger of foreclosure.  (Am. Compl. ¶¶ 64-68).

      16.  Wells Fargo refused to accept any payment in any amount other than the full amount

they considered to be in arrears and foreclosed on her home on August 27, 2010. (Am. Compl. ¶¶ 69-76).

17. Despite the fact that Wells Fargo foreclosed on Plaintiff's home, it still is sending written invitations to apply for HAMP. (Am. Compl. ¶¶ 78-79, 83).

18. Plaintiff and the class are entitled to declaratory and injunctive relief under the ECOA and damages under the VECOA. (Am. Compl. ¶¶ 106). Even if it could be found that the Plaintiff had not submitted a completed application, Wells Fargo was still under an ECOA and VECOA obligation to send an appropriate notice. Plaintiff suffered actual damages, including the loss of other remedies such as continuing to make payments under the original terms of the Note and Deed of Trust, restructuring debt under the U.S. Bankruptcy laws, or selling the home. (Am. Compl. ¶¶ 107, 109).

19. Defendant induced the Plaintiff into a HAMP loan modification and TPP without disclosing that it would consider the reduced monthly payments as instant default and proceed immediately to foreclosure once the TPP was completed. (Am. Compl. ¶¶ 104-105). Wells Fargo failed to follow the HAMP guidelines, failed to safeguard and maintain her documentation submitted with the loan application, refused to accept payment intended to cure the deficiency Wells Fargo claimed, failed to apply her payments according to the terms of the Note and Deed of Trust. (Am. Compl. ¶¶ 72-79, 104, 106).

20. Wells Fargo did not strictly comply with the terms of the pre-acceleration requirement embodied in the Deed of Trust. (Am. Compl. ¶¶ 110 – 113). The Notices of Default by Wells Fargo did not include any of the following mandatory notices required by the Deed of Trust: (1) the amount of the default; (2) the date by which the default must be cured "not less than 30 days for the date the notice is given to Borrower"; and (3) that the Plaintiff had

"the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." (Am. Compl. ¶¶ 112-114).

## Standard of Review

In order for the Defendant to prevail in its motion, it must demonstrate that the Plaintiffs have supplied no set of facts which, taken as true, facially state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007). In order to determine whether the Defendant prevails, it must overcome the considerable hurdle in "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). The Rule requires that the facts alleged by the Plaintiff are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *White v. Jones*, No. 1:10CV799, 2010 WL 3395695, at *2 (E.D. Va. Aug. 23, 2010) *aff'd,* No. 10-7283, 2010 WL 5439712 (4th Cir. Dec. 29, 2010)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

Defendants argue in a footnote that the Amended Complaint is improper as a shotgun pleading. (Def's Mem. at 8, n. 10). A shotgun pleading is one that is "prolix, repetitive, and overly complex," offending Rule 8(a)'s requirement that the Complaint contain a short, plain statement of the grounds on which the pleader is entitled to relief. *Sewraz v. Morchower*, No. 3:08CV100, 2009 WL 211578, at *2 (E.D. Va. Jan. 28, 2009); Fed. R. Civ. P. 8(a).[1] Likewise, if the Complaint states nothing but legal conclusions without the supporting evidence, it too is improper under Rule 8. *Jackson v. Olsen,* No. 3:09CV43, 2010 WL 724023, at *7 (E.D. Va. Mar. 1, 2010). Rather than a "mish mash of a complaint," this class action is a complex matter that

---

[1] Defendant cites two cases where pro se prisoner petitioners filed lengthy, convoluted Complaints against numerous defendants. Even though the court was bound to be especially solicitous of such pro se pleadings, the court nonetheless found that those pleadings were improper under Rule 8's requirements.

relies on many, material facts to demonstrate the Plaintiff and the class are entitled to relief under each of its three claims. *Id.* Defendant's complaint improperly attempts to create a Gordian knot, as it complains both that the Plaintiff's allegations are conclusionary or without factual support in one instance and overly detailed in the other. The reality is – Plaintiff more than pleads a plausible set of claims. Rule 12(b)(6) dismissal is improper.

## ARGUMENT

The Defendant's motion to dismiss is entirely premised on its position that a borrower applying for a loan modification under HAMP never completes Wells Fargo's application and, even if she did complete its application, compliance with the terms of the TPP automatically puts a borrower in default so that an ECOA notice is never required. *See, e.g., Davis v. Citimortgage, Inc*., 2011 WL 891209 (E.D. Mich. Mar. 11, 2011). In Wells Fargo's view, once it induces a borrower into applying for a loan modification under HAMP, it has no obligation under the ECOA. Nor does it have any obligation under Virginia law to engage in good faith and fair dealing related to its then existing contractual obligations. Finally, Wells Fargo argues it has no obligation to strictly comply with the Note and Deed of Trust. In order for the Defendant to prevail, the Court must accept as true disputed facts, or construe them in favor of the non-movant in violation of Rule 12(b)(6); find that a borrower applying for a HAMP loan modification is not entitled to an ECOA notice under a set of guidelines that have never been codified by congress, implemented by the Federal Reserve Board or adopted by any court; reject the common law applicability of the implied covenant of good faith an fair dealing between lender and borrower if a loan modification under HAMP is involved; and reject the terms of the very contracts encumbering the property in the first place. Wells Fargo wants a free pass in all aspects of this case: it asserts an alternate world in which it has utterly no obligations to its

mortgagors so long as HAMP is in any fashion involved.

Defendant fails to acknowledge the relevant allegations in the Complaint required under Fed. R. Civ. P. 8, and even offers "even if the plaintiff's allegations were true for the sake of argument." (Def's Mem. at 26). It is not the sake of argument, it is the legal standard under Rule 12(b)(6) that governs the standard of review, and that standard clearly requires the facts pled in the Amended Complaint and reasonable inferences to be drawn in favor of the Plaintiff.

## I.      THE COMPLAINT ALLEGES A PLAUSIBLE CLAIM UNDER THE ECOA.

## A.      The Plain Language of the Equal Credit Opportunity Act is unambiguous.

The first step in analyzing whether the Plaintiff has set forth facts that state a *prima facie* case under the ECOA is to look to the plain language of the statute itself. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). The cause of action in the Complaint is based on Wells Fargo's failure to provide an adequate adverse action notice in violation of §1691(d) of the ECOA, which provides:

> (d)(1)  Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application. (2)  Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by-- (A)  providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or (B)  giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the persons or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

15 U.S.C. § 1691(d). The statute is clear on its face. To prevail on ECOA claim under §1691(d), the Plaintiffs must prove the following elements: (1) Wells Fargo is a creditor, (2) Plaintiff is a credit applicant, (3) Wells Fargo took adverse action with respect to Plaintiff's

credit application, and (4) Wells Fargo failed to provide Plaintiff with an ECOA-compliant

statement of reasons for its adverse action. *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ.

13158, 2007 WL 2363656, at *2 (S.D.N.Y. Aug. 17, 2007) (citing *Madrigal v. Kline Oldsmobile,*

*Inc.,*423 F.3d 819, 822 (8th Cir.2005)); *accord Diaz v. Va. Hous. Dev. Auth.*, 117 F.Supp.2d 500,

504 (E.D. Va. 2000)(explaining that there is no Fourth Circuit authority directly on point, thus

the analysis begins with the plain language of the statute, citing 15 U.S.C. §1691(d)(1)-(3); Va.

Code Ann. § 59.1-21.21:1(d)(1)-(3); *see* 12 C.F.R. § 202.9(a)(1)-(2)).

      Instead of following the federal statute, the implementing regulations and the case law of

this District and Circuit, the Defendant argues the Court should instead implement an analysis

embodied in an advisory letter from an official at the Federal Reserve Board to its compliance

officers for lending institutions.  (Def's Mem. in Supp. at 10).  It also argues that reliance on the

court's decision in *Bourdelais v. J.P. Morgan Chase Bank, N.A.,* is either inapplicable or

wrongly decided.  (Def's Mem. at 15, citing *Bourdelais*, 2011 WL 1306311 (E.D. Va. April 1,

2011)).  Instead, Defendant argues that the court should apply *Davis v. Citimortgage, Inc*., a true-

one-of-a-kind case from the Eastern District of Michigan. 2011 WL 891209 (E.D. Mich. Mar.

11, 2011).

      **There is no heightened pleading requirement for ECOA Claims.**

      The Defendant argues that the Court must look beyond what is required by the plain

language of the statute, its regulations and case law, and instead require plaintiffs to plead with

particularity in a way that satisfies an analysis conveyed internally at the Federal Reserve.

Intended to advise officers and managers of Federal Reserve consumer affairs sections in matters

concerning compliance examiners, a four-part analysis is described by the Director of the Federal

Reserve Board's Division of Consumer and Community Affairs, Sandra F. Braunstein, to the

Officers and Managers in Charge of Consumer Affairs.  (Def.'s Mem. at 2 n. 3, 9-10 & Nagle

Decl. att. letter from Braunstein to Officers & Managers in Charge of Consumer Affairs

Sections, 12/04/2009)(hereinafter "Braunstein Letter").  Before even addressing the issue of

whether such a letter could add elements to an ECOA claim, the Plaintiff has nonetheless

specifically pled facts that she (a) requested a modification on the repayment terms of her loan to

which Wells Fargo suggested a HAMP modification (Am. Compl. ¶¶ 42-43 ); (b) she applied by

phone, by filling out a Wells Fargo application and providing numerous, additional documents as

requested by Wells Fargo (Am. Compl. ¶¶ 46-48, 55, 58, 64) ; (c) Wells Fargo denied her the

extension of credit by way of a loan modification (Am. Compl. ¶¶ 60-61 ); (d) she was not in

default or delinquent on her loan when she applied both on the phone and by supplying written

application and supplemental documentation and she continued to make her loan payments in

full and on time even as Wells Fargo proceeded with acceleration. (Am. Compl. ¶¶ 40, 45, 52-

53, 56, 59, 68, 75, 78)[2].

 Yet even if the Amended Complaint had somehow neglected these detailed allegations,

the Braunstein letter offers nothing to impede or inform the prosecution of an ECOA claim.  The

document is simply internal guidance for lay claims examiners; it is not a binding regulation or

staff interpretation intended or authorized to add  elements to an otherwise well-pled ECOA

claim.  *Twombley*, 550 U.S. at 1973 & n.14; *accord Erickson*, 551 U.S. at 93; *Iqbal*, 129 S.Ct. at

1950; *see also The Federal Reserve System Purpose & Functions*, Board of Governors of the

Federal Reserve, 9th ed. June 2005, at 75.

 **The Braunstein Letter doesn't alter the elements of an ECOA claim.**

---

[2] In fact, the Defendant automatically deducted the agreed upon payment amount from her
account each month.

Among the responsibilities of The Division of Consumer and Community Affairs are: writing and interpreting regulations to carry out many of the major consumer protection laws, reviewing bank compliance with the regulations, investigating complaints from the public about state member banks' compliance with consumer protection laws, addressing issues of state and federal jurisdiction, testifying before Congress on consumer protection issues, and conducting community development activities. *The Federal Reserve System Purpose & Functions*, at 75. The Braunstein letter falls within the division's purview of investigating complaints from the public about member banks' compliance with consumer protection laws, not in its rulemaking function.[3]  The court is not required to impose a heightened pleading standard based on internal agency guidance in contravention of Rule 8, *Twombley*, *Erickson* and *Iqbal*.  *Twombley,* 550 U.S. at 1973 n.14*; Erickson,* 551 U.S. at 93; *Iqbal,* 129 S.Ct. at 1950.  Not only is the statute clear that the ECOA is violated when a creditor fails to send to a consumer adequate notice of an adverse action resulting from the consumer's application for credit, it mandates that creditors notify applicants the specific reasons the action was taken.  *Id*. at 504. (citing 12 C.F.R. 202.9(a)(1)-(2), which details the two ways a creditor may discharge its duty to provide an adverse action notice to the consumer).  The ECOA broadly defines "adverse action" to mean the denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested.  *Id.*

The Federal Reserve Board promulgated regulations that further define "adverse action," specifically excluding certain transactions from the definition of adverse action, none of which are present in this case.  *See* 12 C.F.R. 202.2(c); *see generally*, 12 C.F.R. 202.1-17 (containing

---

[3] The last time the rules were amended was in 2008, such amendments having no effect on §1691(d) claim.  It is the policy of the Federal Reserve Board to issue interpretations periodically. "Except in unusual circumstances, such interpretations will not be issued separately but will be incorporated in an official commentary to the regulation." 12 C.F.R. 202, appx. D.

Regulation B, the regulations pertaining to the duty of creditors under the ECOA and the

Consumer Credit Protection Act 15 U.S.C. §1601, *et seq*.).   The Federal Reserve Board is

empowered to promulgate regulations necessary to implement the ECOA, and it has, but the

Braunstein letter isn't in this category.

There is not a single federal court in the Country that has adopted the elements articulated

in the Braunstein letter as the pleading standard for an ECOA adverse action notice claim.

Defendant cites no authority that suggests there is an ambiguity, either in the statute or in the

regulations, related to the requirement that a creditor send a specific, adequate adverse action

notice when the extension of credit is a refinance of a mortgage, or even if it is the extension of

credit under HAMP. Despite this, the Defendant ambitiously argues that the court should

nonetheless impose a heightened pleading standard on plaintiffs with § 1691(d) claims. (Def's

Mem. at 10).   To ambitiously.

Section 1691(b) and Regulation B have been successfully utilized, interpreted and

applied in the courts since 1976.[4]   Congress passed the ECOA and empowered the Federal

Reserve to make rules concerning its implementation, and so Regulation B is binding on the

court unless it is found to be defective. *Chevron U.S.A. Inc., v. Nat. Resources Def. Council, Inc.*,

467 U.S. 837, 843-44 (1984).   The Braunstein letter does not change Regulation B, in fact, it is

very nearly a restatement of Regulation B's provisions concerning adverse action notices and

when they are triggered.[5]   Even though the Federal Reserve is empowered to promulgate

---

[4] ECOA was enacted in 1974 and amended in 1976 to include the adverse action notice provision
of § 1691(d) "as a strong, necessary adjunct to the antidiscrimination purpose of the legislation."
*Williams v. MBNA Am. Bank, N.A.*, 538 F.Supp.2d 1015, (E.D. Mich. 2008)(quoting *Fischl v.
Gen'l Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983).
[5] Regulations and agency interpretations contained in regulations are entitled to deference.
*Christensen v. Harris County*, 529 U.S. 576, 586 (2000)(citing *Chevron U.S.A. v. Natural Res.
Def. Council, Inc.*, 467 U.S. 837 (1984).  Even though the Federal Reserve has rulemaking

implementing regulations, the court is not required to defer or give any more weight, other than

to respect the Braunstein letter, or to augment its specified purpose to address loan modifications.

*U.S. v. Mead Corp.*, 533 U.S. 218, 234-235 (2001)(relying on *Chevron,* 467 U.S. 837 and

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).  The Braunstein letter specifically states its

purpose of assisting claims examiners in the application of Regulation B as they relate to loan

modifications, the four-part analysis actually springs from the Regulations as they are currently

in force. [6] 12 C.F.R. 202.1-17.

---

authority, this letter is not a rule but a policy directive concerning implementing regulations, not subject to formal adjudication or notice-and-comment or the rigors associated with law or rulemaking.  *Mead*, 533 U.S. at 234.  This letter is best viewed as a policy statement or enforcement guideline, rather than as the force of a regulation, and therefore "beyond the *Chevron* pale."  *Mead*, 533 U.S. at 234 (citing *Christensen*, 529 U.S. at 587).   It doesn't mean that the letter is without any force, it just means that it is entitled only to "some deference" or "respect." *Id*.

[6] The implementing regulations definitions section is the underlying substance of the Braunstein letter.  To find that a Plaintiff must plead with specificity might require pleading each subsection either positively or negatively:

(c) Adverse action.

(1) The term means:

(i) A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered;

(ii) A termination of an account or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts; or

(iii) A refusal to increase the amount of credit available to an applicant who has made an application for an increase.

(2) The term does not include:

(i) A change in the terms of an account expressly agreed to by an applicant.

(ii) Any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account;

(iii) A refusal or failure to authorize an account transaction at point of sale or loan, except when the refusal is a termination or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts, or when the refusal is a denial of an application for an increase in the amount of credit available under the account;

(iv) A refusal to extend credit because applicable law prohibits the creditor from extending the credit requested; or

(v) A refusal to extend credit because the creditor does not offer the type of credit or credit plan requested.

It verges on ridiculous that Wells Fargo argues the Complaint fails to allege an adverse action where the Complaint is replete with supportable facts regarding Wells Fargo's scheme to induce borrowers into delinquency and default by applying for HAMP modifications only to unilaterally misapply their mortgage payments, rescind TPPs, and otherwise refuse or deny loan modifications.

**B.      The Complaint alleges that Plaintiff submitted an application, which the Defendant treated as an application.**

The Amended Complaint consistently alleges that Plaintiff submitted credit applications for which inadequate adverse action notice was provided. (Am. Compl. ¶¶ 4, 6, 43-44, 46-54, 60-61, 63-64). Even if the allegations concerning the applications lack precision suitable to the Defendant, it is properly pled at this stage of litigation because Wells Fargo acted on the Plaintiff's application. When a creditor makes a decision to decline a request for credit based on information that it received through an inquiry from a prospective borrower, that inquiry constitutes an "application" for credit for purposes of ECOA. *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ. 13158, 2007 WL 2363656, at *5 (S.D.N.Y. Aug. 17, 2007)(quoting *Treadway v. Gateway Chevrolet Oldsmobile, Inc.,* 362 F.3d 971, 981 (7th Cir.2004) "[E]ven if it was not an application in the beginning, when [creditor] declined [applicant's] request, it became an application and creditor was required to comply with [ECOA's notice provisions].").

Although nowhere in §1691(d) is it mentioned that a Plaintiff must allege that he or she is current on a mortgage in order to be entitled to the adverse action notice required by the statute, the Plaintiff nonetheless alleged that she paid her mortgage in full every month by automatic electronic withdrawal directly from her bank account, up to and including at the time the

---

(3) An action that falls within the definition of both paragraphs (c)(1) and (c)(2) of this section is governed by paragraph (c)(2) of this section.
12 C.F.R. §202.2

Defendant was required to provide the Plaintiff with an adverse action notice. (Am. Compl. ¶ 40, 45, 50-53).

### 1.        Plaintiff sufficiently alleged she completed an application

Defendant argues that the Plaintiff has not pled that Wells Fargo *evaluated* Plaintiff's information in order to make a decision to deny Plaintiff a permanent loan modification, that Wells Fargo did not evaluate Plaintiff's application for a loan modification because it did not consider her application complete. (Def.'s Mem. at 12). Defendant has stated its version of the facts, which are disputed by the facts that the Plaintiff alleged in the Amended Complaint. Defendant states that Plaintiff has not alleged a completed application, that Wells Fargo considered it a completed application, that Wells Fargo made a decision based on its evaluation of the Plaintiff's application, nor any new facts regarding whether her subsequent and successive applications were complete. *Id.* at 24. The Complaint plainly alleges that Plaintiffs submitted a completed credit application. (Am. Compl. ¶¶ 44, 47). In fact, it could not be more clear: "Ms. Desogugua forwarded her completed application to Wells Fargo with the requested documentation." (Am. Compl. ¶47). This is sufficient to withstand dismissal.

That there were successive, multiple requests for more documentation by Wells Fargo, which it ignored or lost, is immaterial to stating a *prima facie* cause of action under the ECOA. Defendant finds its smoking gun in what it refers to as the May 17 letter, but completely ignores the totality of the allegations of the Complaint. (Def.'s Mem. at 11-12); (Am. Compl¶¶ 27-36). The Plaintiff alleged in great detail that she complied with every single requirement imposed on her by the Defendants, including sending the same information to Wells Fargo multiple times. (Am. Compl. ¶¶ 43-59). The overarching theme that emerges from the Complaint is that the Defendant capriciously led Plaintiff down a path to ruin by enticing her into a TPP reduced

payment only to accelerate the loan once it denied her for the modification without providing an

accurate ECOA notice explaining the reasons therefore.  The allegations of the Complaint make

clear that reason for denial supplied by the Defendant in the adverse action notice that it did

send, that the Plaintiff failed to submit all requested documents, is a false reason.  (Am. Compl.

¶¶ 54-64, 65-71).  What Defendant did with the documents supplied by the Defendant is part of

the mystery the Plaintiff seeks to unlock and she is entitled to know the true reasons under the

law.

> **2.     Because Defendant sent a denial, though legally inadequate, Plaintiff's application is deemed to have been complete.**

Even if the application was somehow deficient, it is properly pled at this stage of

litigation because Wells Fargo acted on the Plaintiff's application. When a creditor makes a

decision to decline a request for credit based on information that it received through an inquiry

from a prospective borrower, that inquiry constitutes an "application" for credit for purposes of

ECOA.  *Stoyanovich,* 2007 WL 2363656, at *5 (quoting *Treadway v. Gateway Chevrolet

Oldsmobile, Inc.,* 362 F.3d 971, 981 n. 9 (7th Cir. 2004) "[E]ven if it was not an application in

the beginning, when [creditor] declined [applicant's] request, it became an application and

creditor was required to comply with [ECOA's notice provisions].").  Therefore, even if the

Court were to find that the allegation in paragraph 46 of the Complaint was somehow inadequate

to withstand dismissal, the Defendant's action on the Plaintiff's application – evidenced by the

inadequate notice it sent her – demonstrates it considered her application.

Defendant does not dispute that it sent Plaintiff an adverse action notice, therefore any

after-manufactured argument that Plaintiff did not submit a completed application is completely

undermined by the fact that Defendant treated the request for a mortgage modification as an

application under the ECOA.  Plaintiff's complaint is that the notice is inadequate because it fails to state the actual reason(s) that Defendant declined to extend a loan modification.

A very recent case in the Northern District of Illinois applied *Treadway* and further discussed this particular type of ECOA adverse action triggered by a HAMP application.  *Boyd v. U.S. Bank, N.A.,* No. 1:10CV3367, at 13, 114-16 (N.D. Ill. April 12, 2011)(docket #68)(finding that even a phone call suffices as a completed application under 12 C.F.R. § 202.2(f) and Supplemental Directive 09-01, at least at the motion to dismiss stage).  Though not binding here, the court's decision focused on the substance of the application process.  The method of obtaining the application was not the dispositive question but, rather, the question was the information gathered by the lender sufficient to act on the application? In this case, the answer is obvious that the Plaintiff provided information practically *ad infinitum*, beginning with the initial phone call, sufficient for the lender to act on that information by sending a notice that it was refusing to modify the loan.

**3.    Defendant is required to send an ECOA adverse action notice regardless of whether the application was complete**.

The Defendant finds it notable that the Amended Complaint "does not allege a violation of the ECOA on the grounds that Wells Fargo failed to provide her with a proper notice of an incomplete application."  (Mem. in Supp. at 11, n. 18).  Despite Defendant's characterization of the TPP as part of a continuing, dynamic, virtually unending, unknowable application process (Compl. ¶¶ 31, 33-35, 43, 45-52), and that the Complaint sufficiently alleges that she completed an application, (Compl. ¶ 46), the Defendant was still required to send an ECOA notice stating the reason for denial or incompleteness with particularity.  Even if Wells Fargo clings to its claim that the Plaintiff never completed an application, the ECOA requires creditors to provide consumers with written notice that their applications were incomplete and instructions

on how to cure deficiencies.  (Regulation B, 12 C.F.R. §202.9(a)(1)(ii), §202.9(c)(1)(i) & (ii), §202.9(c)(2).

This provision of the ECOA makes it even more obvious that a creditor cannot shirk its notice responsibility by doing what Wells Fargo does:  set up an unending cycle of requests for documentation to avoid considering a consumer's credit application to be complete, but either way avoiding communicating the real reasons it is denying the loan.

**C.      Plaintiff alleged that she was not in default.**

**1.   There is no requirement that a Plaintiff plead she was not in default in order to state an ECOA claim.**

Plaintiff alleged she was neither in default nor delinquent on her mortgage when she applied for a loan modification with Wells Fargo.  (Compl. ¶ 38-39, 43-44).  Wells Fargo accepted the application, processed the application, denied the application, and sent to the Plaintiff a deficient adverse action notice in contravention of the ECOA regulations.  (Compl. ¶¶ 46-47, 50, 52).  Nevertheless, Wells Fargo now still argues that no adverse action notice is required when a consumer pays under a TPP because the fact that a consumer pays under a TPP means that the consumer is immediately, *de facto*, in default.  (Def.'s Mem.  at 14).  Because default status triggers one of the exceptions to the definition of adverse action, this argument appeals to lenders as a promising way to avoid their ECOA notice duty.  The possibility that Wells Fargo might assert a defense or exemption from the ECOA's adverse action notice requirements because of alleged pre-application default is not a matter that can be resolved at this stage of the litigation or upon the face of the complaint.  "Lack of Default" is not an express

element of a claim under either 15 U.S.C. §1681(d) or the VECOA, now at Va. Code. Ann. §§

6.2-502, 503 (2010).[7]

It is truly notable that Defendant argues that the Plaintiff was in default on the date of her

first Trial Payment Plan. (Def.'s Mot. Dismiss at 14).  The Defendant instructed the Plaintiff to

make a reduced payment under the terms of the TPP, while at the same time failing to notify her

that it considered the first TPP payment to be a default under the original note. *Id.*  That

admission, that the lender considers the consumer's payments under a TPP to be default in order

to avoid making accurate adverse action notices under the ECOA and to accelerate the loan into

foreclosure when it ultimately denies the modification, is truly a stunning argument.   Defendant

relies on *Davis v. CitiMortgage* to support its position.  2011 WL 891209, at *2.  In *Davis,* the

court dismissed a plaintiff's ECOA claim despite allegations in the Complaint that the plaintiff

was current on her mortgage payments.  In contrast, in the Eastern District of Virginia, J.

Hudson's recent decision held that an ECOA claim was properly pled in *Bourdelais,* which also

took into consideration the ruling in *Davis*.  Defendant argues *Bourdelais* was wrongly decided

on the ECOA issue (but not the private right of action in the HAMP claims).  In *Davis*, the court

dismissed a borrower's claim because it found that no adverse action notice was required when a

borrower was in default at the time the lender took action.  *Davis*, 2011 WL 891209, at *2.

Defendant reveals that after it tricks a borrower into making reduced payments under a TPP, the

lender will consider the loan to be default, thus it won't have to send out any notices under

Regulation B exceptions because the borrower was in default on the original loan.  The reasoning

---

[7] VECOA at Va. Code Ann. §6.2-500, et seq. (October 1, 2010) was previously codified at Va.
Code Ann. §59.1-21.20 et seq.  The Plaintiffs hereinafter will refer to the old code numbers for
the purpose of this memo only, especially since all the cases relied on refer to the code sections
as they were prior to the October 2010.  The renumbering has not affected the substance of the
code sections cited.

supporting the dismissal in the one-and-a-half page *Davis* decision does not address the totality

of the facts in the case here.  In this case, Wells Fargo's documents do inform the borrower on

the one hand that a TPP is not a permanent modification of the original loan, yet it nonetheless

instructed her to make the reduced payments as a prerequisite to permanent loan modification,

that the TPP payments were in lieu of an not in addition to, the existing loan payments.

At a minimum, whether the Defendant properly treated payments made under the TPP as

a default is not properly before the court on a Motion to Dismiss.  Whether the Plaintiff was in

default as Defendant argues is a fact question, or a mixed question of law and fact, not

appropriately decided under Rule 12(b)(6), but more properly at summary judgment or trial.

Section 1691(b) and Regulation B have been successfully utilized, interpreted and

applied in the courts since 1976.[8]  Aside from *Davis*, Defendant has cited no case anywhere that

has ever required a heightened pleading for a § 1691(d) claim.[9]  Even so, the evidence will

demonstrate that the Plaintiff was not in default when she completed the application process

required by Wells Fargo.

**D.**   **The ECOA and VECOA claims are not in conflict.**

Finally, in a footnote, the Defendant notes that Plaintiff cannot seek money damages

under both VECOA and ECOA claims, which is correct.  (Def.'s Mem. at 9, n. 14).  It is

incorrect, however, to state that there is no demand for actual damages.  *Id.*  To the contrary, the

Plaintiff has demanded statutory punitive damages of $10,000.00 for Wells Fargo's Virginia

---

[8] ECOA was enacted in 1974 and amended in 1976 to include the adverse action notice provision of § 1691(d) "as a strong, necessary adjunct to the antidiscrimination purpose of the legislation." *Williams v. MBNA Am. Bank, N.A.*, 538 F.Supp.2d 1015 (E.D. Mich. 2008)(quoting *Fischl v. Gen'l Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983).
[9] To find that a Plaintiff must plead with heightened specificity might require pleading each subsection of 12 C.F.R. §202.2, *see, supra, n. 6,* either positively or negatively, which would run afoul of the requirements of Rule 8.

adverse action notice violation.  The Plaintiff has alleged violations of both the VECOA and

ECOA, but has demanded money damages only under the VECOA and injunctive relief under

the ECOA.  Notwithstanding the clarity of the allegations, Wells Fargo still attempts to argue

that no actual damages are alleged.

## II.   PLAINTIFF HAS STATED A CLAIM FOR A BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

The Plaintiff has alleged that Wells Fargo breached the implied covenant of good faith

and fair dealing embodied in the Note and Deed of Trust by inducing her into applying for a

modification when Wells Fargo knew it would consider her loan to be in default, never intending

to modify her loan, denying her application without giving her a true reason but instead

supplying a false reason, losing the documentation supplied by the Plaintiff that Wells Fargo said

it required to make a decision on the loan modification application, and failing to follow proper

foreclosure procedures in breach of the Note and Deed of Trust.

Wells Fargo argues that Virginia "does not recognize an independent cause of action for

Breach of the implied covenant of good faith and fair dealing." (Def's Mem. at 18)(citing

*Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A*., 251 Va. 28, 33 (1996) for the point that

an independent tort cannot be maintained, only a breach of the covenant arising from a contract).

However, "an implied covenant of good faith an fair dealing exists in all valid and binding

contracts in Virginia."  *Acuna v. Chase Home Fin., L.L.C.,* No. 3:10CV905-JRS, 2011 WL

1883089, at *5 (E.D.Va. May 17, 2011).   A consumer does not abandon her right to be treated

fairly under state law when she applies for a HAMP loan modification.  It has been Wells

Fargo's position throughout its motion to dismiss that the Note and Deed of Trust are controlling

when it suits their purposes of depriving the borrower of her rights, but not when it demonstrates

that it has breached those same agreements.  In *Acuna*, the Court specifically found that actions

by a lender similar to Wells Fargo's in this case, including an alleged refusal to perform under

the loan contract as informed by the context of the HAMP guidelines, states a claim for breach of

the implied covenant of good faith and fair dealing by:

> (1) inducing him to default by telling him his chances of receiving a loan modification would
> increase if he did so; (2) falsely assuring Acuna about the status of his modification; (3)
> falsely assuring Acuna the home would not be sold at the foreclosure sale; and (4) failing
> to follow HAMP guidelines, he has stated a claim for breach of contract based on breach
> of the implied covenant of good faith and fair dealing. Accordingly the Motion to
> Dismiss is denied with respect to Count III.

*Id.*

In this case, the Plaintiff's Amended Complaint states a claim for breach of the Note and

Deed of Trust, and it is from a breach of those agreements that this cause of action springs.

Although Wells Fargo argues that it had a right to accelerate payment of the note, it did not have

a right to do so after responding to the Plaintiff with only one option for staying current in her

mortgage: a HAMP modification, then proceeding to induce her into what it considered to be a

default by tricking her into a TPP and then foreclosing after losing her documentation and

foreclosing on her home.  It is utterly ridiculous that the Defendants have stated "in a remarkably

similar" case, the court found a lender does not breach its implied duties when it exercises its

rights under a note.  This case is not similar to *Washington v. CitiMortgage, Inc*., 2011 WL

1871228, at *9 (E.D. Va. May 16, 2011).  There, the Court made specific findings that are not

factors here, including that the Plaintiffs "fell behind in their payments" prior to seeking a

modification of the original loan.  *Id*.  They were also seeking a hardship letter from the

substitute trustee in order to obtain a loan from the Mrs. Washington's retirement account.

Nevertheless, the court still found that the Plaintiff's had alleged a breach of the Deed of Trust

sufficient to withstand dismissal and denied the Motion to Dismiss.  *Id*.

In this case, it is clear that the breach of the covenant of good faith and fair dealing is not

in its exercise of binding contractual rights, but instead of its insidious method of inducing the

Plaintiff into applying for a HAMP which it would consider to be a default, losing the documentation she provided to them, failing to provide the true reason for denying her loan modification, failing to follow the HAMP guidelines, refusing to accept Plaintiff's attempt at make-up payments in order to cure, failing to notify her of her right to go to court to prevent foreclosure, and for misstating and misleading her about her rights to assert the non-existence of a default and defend against a foreclosure as it was required by law to do so, the Plaintiff has pled the breach of the implied covenant of good faith and fair dealing. *Id.*

## III.   PLAINTIFF HAS STATED A CLAIM FOR BREACH OF CONTRACT.

In Virginia, a deed of trust is a contractual obligation of the parties.  The preamble to Va. Code Ann. § 55-59 states that "every deed of trust to secure debts or indemnify sureties in the nature of a contract and shall be construed according to its terms." Thus, a lender's breach of the terms of a deed of trust gives rise to a claim for breach of contract. In *Bayview Loan Servicing v. Simmons*, the Supreme Court of Virginia applied the principles of contract construction to the provisions of a deed of trust. 654 S.E. 2d 898, 901 (2008).

### A.   The notices of default do not comply with the Deed of Trust.

Plaintiff's Deed of Trust requires that prior to acceleration of the mortgage note:

> **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.** (emphasis in original).

(Am. Compl. ¶ 111, Ex. 8 ¶ 22).  Plaintiff has alleged that the time she received the notices of default, she had never missed a mortgage payment. (Am. Compl. ¶¶ 67, 70). Further, the Defendant continued to automatically deduct the Plaintiff's monthly

mortgage payment from her account after date on the notice of default (Am. Compl. ¶ 68). The notices of default fail to state the correct amount of her alleged default and do not provide her with the required 30 days to cure. (Am. Compl. ¶¶ 112, 113).

Defendant's motion argues that the notices of default "clearly" provided the Plaintiff 30 days to cure the default. Defendant erroneously assumes that the notices of default dated May 23, 2010 and June 20, 2010 were mailed the day they were dated. However, both notices of default are dated on a Sunday.[10] As Defendant is aware, the notices of default were not "mailed by first class mail" on the dates of the notices, as it is well established that the United States Postal Service does not operate on Sundays. Because of this impossibility, the Defendant's argument fails.

Further, Defendant argues that the Plaintiff has not challenged the authenticity of the notices of default in order to satisfy Rule 8 pleading requirements. Indeed, Plaintiff challenges not that a notice of default was sent, but the legal sufficiency of the notices of default that Defendant sent. Plaintiff outlines in painstaking detail that she made monthly payments for the time period in question (Am. Compl. ¶¶ 40, 45, 52-53, 56, 59, 68, 75, 78) and more than sufficiently pleads that the amounts in the notices of default are incorrect.

The Deed of Trust also requires the following in the pre-acceleration notice:

**The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.** (emphasis in original).

(Am. Compl. ¶ 111, Ex. 8 ¶ 22).  Instead, the Defendant's pre-acceleration notice states:

---

[10] *See* http://www.timeanddate.com/calendar/?year=2010

If foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have. (Am. Compl. Exs. 12, 13).

As pled in the Amended Complaint, pursuant to the language in the notices of default, Plaintiff made numerous attempts to contact the Defendant to "argue" that she had made every payment on time. Despite her efforts, Defendant continued to inform Plaintiff that she was in default and refused to allow her to cure. (Am. Compl. ¶ 72). Defendant's argue that the language in its notices of default sufficiently advise the Plaintiff of her rights. However, a side by side comparison of the language indicates otherwise:

| **Deed of Trust** | **Notices of Default** |
| --- | --- |
| "the right to reinstate after acceleration and…" | "[i]f foreclosure is initiated, you have the right…" |
| "the right to bring a court action…" | "the right to argue…" |
| "to assert the non-existence of a default or any other defense of [homeowner] to acceleration and sale." | "that [homeowner] did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have." |

The first example implies that the borrower must wait until foreclosure is initiated to exercise her right. However, a foreclosure in Virginia only requires a fourteen (14) day notice of sale, one of the fastest timeframes in the nation.[11] Second, the right to argue and the right to bring a court action are not substantially similar, particularly in a non-judicial foreclosure state such as Virginia. Third, this example weakens "asserting defenses to sale and acceleration" to biased and confusing language that favors the Defendant.

---

[11] Va. Code Ann. §55-59.1(a); *See also* http://www.washingtonpost.com/wp-dyn/content/article/2010/12/23/AR2010122305457.html. "Virginia Puts Homeowners on Fast Track to Foreclosure," David S. Hilzenrath, December 24, 2010.

Defendant's deficient language in their notices of default is a systematic and calculated effort not to advise homeowners, like the Plaintiff, of their right to seek court intervention if there is a dispute in the non-judicial foreclosure process.

**B.      The notices of default are a condition precedent to a foreclosure sale.**

In *Bayview*, the Virginia Supreme Court held that "[b]ecause Bayview did not comply with a condition precedent under the Deed of Trust…Bayview has not acquired the right to accelerate payment under the terms of the Deed of Trust."  654 S.E. 2d at 901 (The notice of default is a condition precedent to acceleration under the Deed of Trust.).  In *Washington v. CitiMortgage, Inc.,* J. Gibney denied the motion to dismiss for violation of the deed of trust because the plaintiffs alleged that they did not receive the pre-acceleration notice that was required. 2011 WL 1871228, at *9.[12]  Dismissal was properly rejected because it required an examination of the documents which were not attached to the Complaint. *Id.* [13]

Defendants seek to analogize the common law, contractual requirements in the Deed of Trust to the statutory advertising requirement for a non-judicial foreclosure sale. Defendants want this court to adopt a "substantial compliance" standard to the notices of default that are a condition precedent and required pursuant the Deed of Trust, despite state and federal court precedent directly on point.  *Bayview*, 654 S.E. 2d at 901; *Washington*, 2011 WL 1871228, at *9.

The pre-acceleration notice is not discretionary. Every requirement imposes a duty on the lender with the language, "shall." Yet, the Defendant elected to provide notices that do not

---

[12] Unlike this case, the plaintiffs did not allege any deficiency in the pre-acceleration notice.

[13] This Court has also denied a motion to dismiss a breach of contract claim when the lender fails to comply terms of the deed of trust. *Najdi v. BAC Home Loan Serv. L.P.*, No. 1:10CV1466-LO (E.D.Va. March 25, 2011)(Docket ## 21-22)(denying Defendant's motion to dismiss the Amended Complaint).  In *Najdi,* the plaintiff alleged that the defendant breached a provision of the deed of trust requiring the lender to comply with "applicable law" which included the federal government's Home Affordable Modification Program (HAMP).

include the plain and unambiguous language required by the Deed of Trust. Virginia law is well settled that a contract will be construed more strictly against the party that prepared it. *Winn v. Aleda Constr. Co.,* 227 Va. 304, 315 S.E.2d 193 (1984).

However, as indicated above, the deficiencies in the Defendant's notices of default are so substantial that they might as well not have sent the notices at all. The accurate amount of the default, a 30-day timeframe to cure the default and the rights of the Plaintiff to raise defenses to acceleration and foreclosure in court were omitted from the Defendant's notices of default.

The Defendant argues that there was no prejudice to the Plaintiff for its violations of the Deed of Trust. The Defendant overlooks the fact that the Plaintiff lost her home even though she continually attempted to pay amounts to cure the alleged default, but because she was given an inaccurate amount of the default[14], she was deprived of this right. Instead, she has been served with court papers for an eviction and is at risk of becoming homeless with her young daughter and ailing parents. (Am. Compl. ¶¶ 81-82, 85).

## CONCLUSION

For the reasons articulated in this Opposition, the Plaintiff respectfully requests that the Defendant's Motion to Dismiss be denied in its entirety.  If the court determines that the Complaint lacks particularity required over and above that required by Rule 8, the Plaintiffs move the court for leave to file an amended complaint.

---

[14] To date the Plaintiff makes her full monthly mortgage payment to the Clerk of Court in Prince William County where her unlawful detainer action is pending.

Respectfully submitted,

JULIA DESOGUGUA,

_____/s/_____

Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net


Kristi Cahoon Kelly, Esq., VSB #72791
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
(703) 277-9774
(703) 591-9285 Facsimile
E-mail:  kkelly@siplfirm.com

Susan M. Rotkis, VSB#40693
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: srotkis@clalegal.com

*Counsel for Plaintiff*

### *CERTIFICATE OF SERVICE*

I certify that on July 1, 2011, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

Terry Catherine Frank
Kaufman & Canoles PC (Richmond)
1051 E Cary St
3 James Center, 12th Fl
Richmond, VA 23219
E-mail:  tcfrank@kaufcan.com

John Bradley Reaves
Kaufman & Canoles PC (Norfolk)
150 W Main St
Suite 2100
PO Box 3037
Norfolk, VA 23514
(757) 624-3000
(757) 624-3169 (fax)
E-mail:  jbreaves@kaufcan.com

Hunter Wilmer Sims, Jr.
Kaufman & Canoles PC
150 W Main St
PO Box 3037
Norfolk, VA 23510
(757) 624-3000
E-mail:  hwsims@kaufcan.com

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net