**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JULIA DESOGUGUA, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE,<br><br>Defendants. | )<br>)<br>)  C.A. No. 1:11-cv-00188-LO-JFA<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REBUTTAL IN SUPPORT OF**
**DEFENDANT WELLS FARGO BANK, N.A.'S MOTION**
**TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS COMPLAINT**

Hunter W. Sims Jr. (VSB No. 09218)
Terry C. Frank (VSB No. 74890)
J. Bradley Reaves (VSB No. 71389)
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone: (757) 624-3205
Facsimile: (757) 624-3169
hwsims@kaufcan.com
tcfrank@kaufcan.com
jbreaves@kaufcan.com

Irene C. Freidel (*pro hac vice*)
Jennifer J. Nagle (*pro hac vice*)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone: (617) 261-3100
Facsimile: (617) 261-3175
irene.freidel@klgates.com
jennifer.nagle@klgates.com

July 11, 2011                                *Attorneys for Defendant Wells Fargo Bank, N.A.*

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits this Rebuttal to Plaintiff's Opposition ("Opposition" or "Opp.") to Wells Fargo's Motion to Dismiss the First Amended Class Complaint ("Amended Complaint") brought by plaintiff Julia Desogugua ("plaintiff").  For the reasons stated below, the Amended Complaint should be dismissed with prejudice.

First, the Opposition reveals and confirms that plaintiff's ECOA (and VECOA) claim has no factual foundation, and it is instead nothing more than an attempt by plaintiff to challenge her eligibility for a permanent HAMP modification.  Indeed, plaintiff expressly argues that "Wells Fargo failed to follow the HAMP guidelines" and "failed to safeguard and maintain her documentation submitted with the [HAMP] loan application …." Opp. at 6.[1]  Searching for a method to challenge Wells Fargo's treatment of her HAMP application (in light of her own admission that she has no private right of action to enforce HAMP (Opp. at 2)), plaintiff grasps at ECOA, but nowhere does she provide any factual basis for an ECOA claim or otherwise explain why her grievance falls within ECOA's ambit.[2]

As for ECOA, plaintiff largely defends her claim by arguing – for reasons that are uncertain – that a December 4, 2009 Consumer Affairs advisory letter issued by the Federal

---

[1]    In fact, plaintiff makes no bones about her real complaint and it is not redressable under ECOA: "[t]he overarching theme that emerges from the Complaint is that the Defendant capriciously led Plaintiff down a path to ruin by enticing her into a TPP reduced payment only to accelerate the loan once it denied her for the modification …." Opp. at 16-17.

[2]    The damages plaintiff alleges similarly reveal that her real claim flows from her inability to obtain a permanent modification, not from any actions regulated by ECOA.  She argues that she "suffered actual damages, including the loss of other remedies such as continuing to make payments under the original terms of the Note and Deed of Trust, restructuring her debt under the U.S. Bankruptcy laws, or selling the home." Opp. at 6.  It is inconceivable that these damages could have flowed from any content that was, or was not, set forth in the May 17 Letter sent to plaintiff by Wells Fargo to inform her that her application was not complete and thus could not be acted upon.

Reserve Board ("FRB") does not accurately set forth the applicable ECOA standards for assessing when an adverse action notice is required, when that is precisely what it does. *See* Federal Reserve Board Consumer Affairs Letter No. 09-13, dated December 4, 2009, from Sandra F. Braunstein, Director of the Division of Consumer and Community Affairs, Federal Reserve Board (the "Braunstein Letter") (attached to the June 6, 2011 Declaration of Jennifer J. Nagle ("Nagle Decl.") as Exhibit A); *see also* 12 C.F.R. §§ 202.2(c), (f), & (q). Plaintiff argues, but never explains, how the Braunstein Letter sets forth any additional requirements under ECOA that are not included within the statute or its implementing regulations.

More important, plaintiff has failed to plead any facts that Wells Fargo was obligated to send her an adverse action notice under ECOA, let alone facts showing that the May 17, 2010 letter she received from Wells Fargo (Ex. 11 to the Amended Complaint) – or any other letter she may have received – violated ECOA. The May 17 letter which is the focus of plaintiff's ECOA claim, shows, on its face, that Wells Fargo made no decision – adverse or otherwise – on plaintiff's credit because Wells Fargo considered plaintiff's application incomplete. Indeed, the Amended Complaint even confirms that plaintiff remained eligible for HAMP consideration after she received the May 17 letter. Amended Complaint at paras. 63-64, 83-84.

Second, plaintiff's Opposition fails to explain how the Amended Complaint has alleged facts supporting either of her individual claims – for breach of the implied covenant of good faith and fair dealing (Count II) and to set aside the foreclosure sale (Count III). The first claim is nothing more than an impermissible effort to enforce HAMP through the back door; the second claim is an effort by plaintiff to avoid her foreclosure sale, but she has offered no factual or legal basis to support it. For each of these reasons, and as set forth more fully below, plaintiff's Amended Complaint should be dismissed with prejudice for failure to state a claim.

I.  **The Facts Alleged In The Amended Complaint Do Not Support A Claim for Violation Of ECOA's Adverse Action Notice Requirements.**

Nowhere does the Amended Complaint set forth alleged facts that would support plaintiff's ostensible claim that the May 17 Letter she received from Wells Fargo – notifying her clearly that her HAMP application was not complete and therefore she was not eligible for a modification – violated ECOA and entitles her to actual damages.

First, instead of trying to support her ECOA claim, plaintiff argues at length that the Braunstein Letter, referenced by Wells Fargo in its Supporting Memorandum, does not accurately set forth the applicable law under ECOA and its implementing regulations with regard to adverse action notices. Opp. at 10-15. But it does. The Braunstein Letter accurately summarizes ECOA's requirements, and adds no new requirements that do not already exist in the statute or its implementing regulations. Indeed, while plaintiff argues extensively that the Braunstein Letter does not create a "heightened pleading standard for ECOA Claims" (Opp. at 10), she never explains what the purportedly "heightened pleading standard" is that she is arguing against. *See* Opp. at 11 (suggesting that the letter adds "elements to an ECOA claim" but not explaining what those elements are). Wells Fargo nowhere asserted that there was any applicable pleading standard other than that set forth in ECOA and in Regulation B, and – despite her lengthy harangue about it – plaintiff does not point to anything new that the Braunstein Letter adds to the statutory analysis.

As set forth in the letter, a borrower must allege the following four elements to establish that an adverse action has occurred to trigger ECOA: (a) there must be a request by a consumer for an extension of credit; (b) there must be a credit application made in accordance with procedures used by a creditor for the type of credit requested (12 C.F.R. § 202.2(f)); Official Staff Commentary, 12 C.F.R. § 202.2(f)-1)); (c) there must be an adverse action on the

application (12 C.F.R. § 202.2(c)); and (d) the borrower must not be delinquent or in default on the loan (15 U.S.C. § 1691(d)(2)(6)). Each of these elements is set forth in ECOA and Regulation B, and the Braunstein Letter does nothing more than summarize the statutory and regulatory requirements. *See* 12 C.F.R. §§ 202.2(c), (f), & (q). Indeed, despite her protracted attack on the Braunstein Letter, plaintiff concedes that the letter tracks Regulation B's provisions. *See* Opp. at 14 ("the four-part analysis actually springs from the Regulations as they are currently in force. 12 C.F.R. 202.1-17").

Second, plaintiff has offered no well-pled facts that would show she submitted a "completed application" to Wells Fargo within the meaning of the statute. ECOA only requires notice of an adverse action after the creditor receives a "completed application" "made in accordance with procedures used by a creditor for the type of credit requested." 12 C.F.R. § 202.2(f); *see also* 15 U.S.C. § 1691(d)(1) ("[w]ithin thirty days …after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."). While plaintiff argues that she has alleged she submitted a completed application to Wells Fargo when she received the May 17 Letter, the May 17 Letter shows on its face that Wells Fargo did not consider her application complete "in accordance with procedures used by a creditor for the type of credit requested." These procedures are largely determined by the U.S. Treasury's HAMP guidelines. *See, e.g.,* SD 09-07 (outlining the documents a borrower must submit for HAMP eligibility consideration).[3] By attaching the May 17 Letter to the Amended Complaint, plaintiff concedes as much. Amended Complaint at para. 62.[4] As such, ECOA's adverse action

---

[3] SD 09-07 is available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0907.pdf.

[4] In circuitous fashion, plaintiff argues that Wells Fargo must have acted on plaintiff's application (and therefore it must have been "complete") because it sent her an "inadequate" adverse action notice. Opp. at 17. This is a house of cards built on assumptions not facts.

notice requirements were not triggered. *See Sanders v. Ethington*, 2010 WL 5252843, at *4 (D. Utah Dec. 16, 2010) (dismissing ECOA claim where plaintiffs failed to submit documents required by credit for loan modification application); *Lilley v. JPMorgan Chase Bank*, 2010 WL 4392561, at *3 (D. Utah Oct. 28, 2010) (ECOA claim dismissed where plaintiff failed to plead that application was complete "in accordance with procedures used by a creditor for the type of credit requested").[5]

Third, because plaintiff's HAMP application was not complete,[6] plaintiff has not pled how Wells Fargo could have taken any "adverse action" as to that application. *See* Opp. at 5.[7] The plain language of ECOA limits "adverse action" to decisions on a customer's credit. 15 U.S.C. § 1691(d)(6); 12 C.F.R. § 202.2(c). Plaintiff suggests that Wells Fargo need not have made a decision on her credit for an "adverse action" to have occurred. Reading between the lines, plaintiff's argument appears to be that an "adverse action" (and a "denial" of credit) was the *de facto* result of Wells Fargo's determination that her application was incomplete (*see also*

---

[5] Plaintiff cites *Stoyanovich v. Fine Art Capital, LLC*, 2007 WL 2363656, at *4 (S.D.N.Y. Aug. 17, 2007) (quoting *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 981 (7th Cir. 2004)) (Opp. at 15), but both of these cases are inapposite and, if anything, support Wells Fargo's arguments here. Both of these cases involved a credit decision based on an application that the creditor determined complete "in accordance with procedures used by a creditor for the type of credit requested." 12 C.F.R. § 202.2(f). That is not the allegation here.

[6] Plaintiff appears intent on challenging Wells Fargo's determination that her application was incomplete. The Opposition is rife with complaints as to how plaintiff believes Wells Fargo mis-handled the documents she submitted pursuant to HAMP. *See* Opp. at 4, 5, 6, 18 ("Plaintiff provided information practically *ad infinitum* …" but Wells Fargo "refus[ed] to modify the loan."), & 19. Plaintiff even concedes that her real goal in this case is to "unlock" the "mystery" of what Wells Fargo "did with the documents supplied by plaintiff [sic]." Opp. at 17. But that purported conduct is not actionable under ECOA; nor is it actionable under HAMP, as plaintiff herself concedes.

[7] A groundless allegation – such as an allegation with no factual support or a legal conclusion – is insufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *ReliaStar Life Ins. Co. v. Lormand,* 2011 WL 900113, at *1 (E.D. Va. Mar. 11, 2011).

Opp. at 11), but that argument does not work. There can be no adverse action – that is, a negative credit decision based on evaluation of the applicant's credit data – if the creditor does not determine that the application is complete. That is precisely what occurred here and it is precisely what plaintiff's own complaint reflects. Amended Complaint at para. 61 (citing Ex. 11 thereto).

The FRB's Official Staff Commentary ("OSC") states that if the creditor "<u>evaluates information about the consumer</u>, decides to decline the request, and communicates this to the consumer, the creditor has treated the inquiry … as an application" and must comply with the adverse action requirements. OSC, 12 C.F.R. § 202.2(f)-1 (emphasis added). *See Stoyanovich*, 2007 WL 2363656, at \*5; *see also Treadway*, 362 F.3d at 976 (an adverse action occurs when "the decision maker (1) reviews the applicant's credit report to determine whether she is creditworthy, (2) makes a determination adverse to the application (i.e., that she is not creditworthy), (3) decides not to proceed any further in arranging credit and (4) as a result the applicant is not granted credit"). Exhibit 11 to the Amended Complaint establishes on its face that Wells Fargo did not "evaluate" plaintiff's information – and it made no determination that plaintiff was not creditworthy – because it did not consider plaintiff's application complete. Indeed, as noted above, plaintiff has pled facts reflecting that Wells Fargo continued to communicate with plaintiff regarding her HAMP eligibility after it sent the May 17 letter. Amended Complaint at paras. 63-64, 83-84.[8]

<u>Fourth</u>, plaintiff attempts to impute to Wells Fargo the assertion that no HAMP applicant can ever be entitled to an ECOA adverse action notice because they would always be in default

---

[8] Plaintiff states in her Opposition that "Wells Fargo denied her application for a loan modification under HAMP" in December 2009. Opp. at 3. This statement is nowhere in the Amended Complaint and it is inconsistent with the May 17 letter attached to the Amended Complaint.

7

upon making their trial payments. Opp. at 2, 8. This is not so, and it does not accurately represent Wells Fargo's argument in this case. Wells Fargo does not, and has no desire to, do as plaintiff suggests, that is, "avoid [its] ECOA notice duty." Opp. at 19.[9] There are certainly circumstances where a borrower who is not in default may apply for a HAMP modification and be denied while still current on his or her loan. Prior to June 1, 2010 (when HAMP Supplemental Directive 10-01 became effective), there were numerous borrowers – unlike plaintiff – who were evaluated for HAMP eligibility based on a completed application *prior* to starting a trial plan (and making reduced payments). *See* 09-01 at 5-6 (Ex. 2 to Amended Complaint). Since June 1, 2010, *all* HAMP applicants are determined eligible or ineligible based on completed applications prior to making trial plan payments. SD 10-01 at 1 (Ex. D to Nagle Decl.). Any of those borrowers who were current as of the date of their eligibility determination (they would have to be in imminent default, however, to qualify for HAMP under SD 09-01 at 2-4) would be entitled to an adverse action notice under ECOA if their application were denied.[10]

---

[9] Plaintiff's argument becomes truly unraveled and irrational when plaintiff asserts that lenders purposefully consider borrowers to be in default when they are on TPPs "in order to avoid making accurate adverse action notices under the ECOA and to accelerate the loan into foreclosure when it ultimately denies the modification …." Opp. at 20. Plaintiff's suggestion that there is some link between lenders seeking to avoid providing adverse action notices under ECOA so that they can intentionally set mortgage loans up to fail lacks any credibility whatsoever. Equally implausible is plaintiff's theory that Wells Fargo "tricks" borrowers into making TPP payments and thereby defaulting so that "it won't have to send out any notices under" ECOA. Opp. at 20.

[10] Moreover, plaintiff's Opposition demonstrates that plaintiff confuses the application she submitted for a HAMP Trial Period Plan ("TPP") and the application necessary for a permanent loan modification. In the Complaint, plaintiff does not allege that she submitted a completed application for a <u>permanent modification</u>. Her sole allegation on this issue refers only to an application for a Trial Period Plan, which plaintiff obtained. Amended Complaint at para. 46. Indeed, plaintiff alleges that she "received, completed, and returned to Wells Fargo an application for <u>a Trial Period Plan</u>." Opp. at 4 (citing Amended Complaint at para. 46) (emphasis added) – <u>not</u> that she provided a completed application for a permanent HAMP modification.

<u>Last</u>, plaintiff is left to argue that "even if it could be found that the Plaintiff had not submitted a completed application, Wells Fargo was still under an ECOA and VECOA obligation to send an appropriate notice." Opp. at 6. However, plaintiff nowhere explains how the notice she received was not "appropriate." Wells Fargo's action falls squarely within the FRB's commentary regarding the notification requirements of 12 C.F.R. § 202.9(a)(1). According to the FRB, "[w]hen an application is incomplete regarding information that the applicant can provide and the creditor lacks sufficient data for a credit decision, the creditor may deny the application giving as the reason for denial that the application is incomplete." OSC, 12 C.F.R. § 202.9, para. 9(a)(1) (comment 3). That is precisely what the May 17 letter does. *See also* 15 U.S.C. § 1691(d).[11] The letter notified plaintiff that Wells Fargo could not offer her a HAMP modification, and it unambiguously set out the reason: plaintiff's failure to provide requested documentation.[12]

What plaintiff's Opposition makes clear is that plaintiff's Complaint is not with the May 17 letter itself, but rather the reason set forth in the letter. Plaintiff cannot dispute that the May 17 letter says what it says. Her real beef is her belief that the reason set forth in the May 17 letter

---

[11] Plaintiff attempts to salvage her claim by alleging that, even if the application was not complete, Wells Fargo was obligated to send her a notice of incomplete application. Opp. at 18. The Amended Complaint, however, does not allege a violation of ECOA or VECOA on this basis and she cannot amend her Complaint by way of her opposition. *See Rivera v. Prince William County Sch. Bd.*, 2009 WL 2232746, at *4 (E.D. Va. July 22, 2009) (plaintiff could not amend her complaint via her opposition brief) (citing cases).

[12] Even if this Court were to find that plaintiff has sufficiently alleged an ECOA claim on these facts, plaintiff's claim should be dismissed because Wells Fargo's May 17 letter was sent in good faith to inform the borrower of the status of her application, namely that information was missing. Pursuant to 15 U.S.C. § 1691e(e), "[n]o provision of this subchapter imposing liability shall apply to any act done or omitted in good faith." Plaintiff does not allege that the May 17 letter was sent by Wells Fargo in bad faith. In fact, her own conduct after receipt of the letter, i.e., sending the requested additional information, suggests that Wells Fargo was indeed in need of further information.

is false. As plaintiff argues, "the notice is inadequate because it fails to state the actual reason(s) that Defendant declined to extend a loan modification." Opp. at 18.[13] However, to the extent that plaintiff's claim is that the May 17 letter was really a pretext, plaintiff has failed to plead what the pretext was for. She has not alleged that the "real reason" Wells Fargo determined it could not provide her with a permanent HAMP modification as of May 17 fell within any on the reasons enumerated in 15 U.S.C. § 1691(a)(1)-(3). *See, e.g, Wright v. Suntrust Bank*, 2008 WL 3106884, at *3 (E.D. Va. Aug. 4, 2008) (dismissing ECOA claim where plaintiff argued reason provided by creditor for denying credit was a pretext, but plaintiff did not plead a prohibited reason for denial of credit application). In short, plaintiff has failed to plead a claim that falls within ECOA, and she has offered no factual basis to support her hypothesis that the May 17 letter was somehow untruthful. For all of these reasons, plaintiff's ECOA claim should be dismissed with prejudice.

## II. Plaintiff Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Plaintiff's implied covenant claim should be dismissed for at least the following reasons. First, plaintiff's Opposition fails to dispute that her breach of the implied covenant of good faith and fair dealing claim is nothing but an impermissible attempt to privately enforce HAMP. Nor can she. Indeed, there can be no doubt that plaintiff seeks to enforce Wells Fargo's HAMP obligations through her implied covenant claim; the Amended Complaint expressly reveals that the claim stems from Wells Fargo's "fail[ure] to follow HAMP guidelines" as well as its purported failure to properly disclose how it would treat her reduced payments under a HAMP

---

[13] Plaintiff's reliance on *Boyd v. U.S. Bank, N.A.*, 2011 WL 13749686 (N.D. Ill. Apr. 12. 2011) (Docket No. 68), which she does not even submit for the Court's review, is misplaced. *Boyd* merely stands for the proposition that applications may be taken in different forms, be it by phone or in writing. Such an issue is not in dispute here. Rather, what is clear on the face of the Complaint is that plaintiff did not provide all of the requisite materials, no matter the medium.

TPP. Amended Complaint at para. 104. Federal courts, however, have repeatedly held that a plaintiff cannot use state law to enforce Wells Fargo's obligations under HAMP. *See, e.g.*, *Nash v. GMAC Mortgage, LLC*, 2011 WL 2470645, at *10 (D.R.I. May 17, 2011); *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 1306311, at *4-5 *(E.D. Va. Apr. 1, 2011); *Steffens v. American Home Mortgage Servicing, Inc.*, 2011 WL 901179, at *2-3 (D.S.C. Mar. 15, 2011); *Wigod v. Wells Fargo Bank, N.A.*, 2011 WL 250501, at *4-5 (N.D. Ill. Jan. 25, 2011) (appeal pending).[14]

Second, even if plaintiff could enforce HAMP through an implied covenant claim, she has failed to sufficiently plead the basis for any such claim.[15] Plaintiff argues that the count is predicated on the underlying Deed of Trust and Note contracts. *See* Opp. at 23. Yet she has failed to plead, as she must, that Wells Fargo exercised its discretion under either the Deed of Trust or Note in bad faith. *See Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 465 (E.D. Va. 2008). Moreover, plaintiff cannot state an implied covenant claim against Wells Fargo for exercising its express contractual right under the Deed of Trust to accelerate payment on the Note and foreclosure on the property. *See id.* at 465. And to the extent that plaintiff's implied covenant claim is based on her allegations that Wells Fargo failed to fulfill its

---

[14] Plaintiff's reliance on *Acuna v. Chase Home Finance, LLC*, 2011 WL 1883089 (E.D. Va. May 17, 2011), should be disregarded. The *Acuna* decision is predicated on little analysis and thus is not persuasive, it fails to address whether plaintiffs can enforce HAMP through state law, and it is against the growing body of case law in this area. *Id.* at *6.

[15] As set forth in Wells Fargo's opening brief, plaintiff cannot sustain an independent cause of action for breach of the implied covenant of good faith and fair dealing. *See Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 33 (1996). Any such claim is simply part and parcel of plaintiff's breach of contract claim. *See Espejo v. George Mason Mortgage, LLC*, 2010 WL 447009, at *8 (E.D. Va. 2010).

contractual obligations under the Deed of Trust or Note, *see* Amended Complaint at para. 104, she fails to state a claim for the reasons set forth below in Section III.

The Court should disregard plaintiff's attempt to distinguish *Washington v. CitiMortgage, Inc.*, 2011 WL 1871228 (E.D. Va. May 16, 2011), on the basis that the *Washington* plaintiffs were behind on their payments prior to seeking a modification. In *Washington*, the plaintiffs sought modification assistance after defaulting and were purportedly promised by defendants that "any pending foreclosure sale would be postponed/stalled so that Plaintiffs could get" a loan from their retirement account. *Id.* at *3. The *Washington* plaintiffs further alleged that they were promised that they could "repay the past due payments and reinstate the loan to current status." *Id.* Nevertheless, the plaintiffs' property was sold at foreclosure even though they had informed defendants that a check sufficient to reinstate their loan was forthcoming. *Id.* Under such circumstances, the Court held that plaintiffs failed to state a claim for breach of the implied covenant of good faith and fair dealing because the defendants were simply exercising their express rights under the Deed of Trust. *Id.* at *8-9. The same holding should apply here; the legal principle is the same regardless of any differences in the facts.[16] Wells Fargo exercised the express rights provided under the Deed of Trust, and it was entitled to do so. The Amended Complaint does not plead facts to the contrary. At bottom, plaintiff has failed to allege facts to support a claim for breach of the implied covenant of good faith and fair dealing, and plaintiff's argument is not a valid substitute.[17]

---

[16] Further, plaintiff mischaracterizes the *Washington* case. While it is true that the Court did not dismiss the entire complaint, it did dismiss the plaintiffs' breach of the implied covenant of good faith and fair dealing claim. *Id.* at *8-9.

[17] As set forth in note 14 above, plaintiff's reliance on *Acuna v. Chase Home Finance, LLC* should not guide the Court's analysis. In *Acuna*, the Court did not address whether defendants' exercise of their express rights under the deed of trust impacted plaintiff's implied covenant

### III. Plaintiff Has Failed to State a Breach of Contract Entitling Her to Have the Foreclosure Sale Set Aside.

Plaintiff's breach of contract claim is entirely predicated on the adequacy of Wells Fargo's disclosures with respect to the Notices of Default. None of the alleged inadequacies, however, could be sufficient to set aside plaintiffs' foreclosure sale. Specifically, plaintiff alleges that Wells Fargo failed (1) to disclose the correct amount of the default; (2) to provide plaintiff at least 30 days to cure the default; and (3) to inform plaintiff that she had the right to bring a court action to challenge the default and any acceleration and sale. Amended Complaint at paras. 112-14. Not only are these alleged deficiencies ethereal, plaintiff has alleged no prejudice warranting that her foreclosure be set aside.

Plaintiff also offers little support for her claim that the Notices failed to provide the correct delinquency amount. Her only argument is that "she made monthly payments for the time period in question." Opp. at 25. Similarly, plaintiff alleges in the Complaint that she "never missed a payment." Amended Complaint at paras. 67, 70. Such allegations, however, do not support her claim with respect to the sufficiency of either Notice. In fact, plaintiff admits that she began making "reduced" monthly payments in January 2010. *Id.* at para. 48. Further, her TPP is clear that payment under a trial modification would not modify her obligations under her original loan documents in any way. *See id.*, Ex. 10 at para. 2.G ("I understand that the [TPP] is not a modification of the Loan Documents."); *id.*, Ex. 10 at para. 4.D ("all terms and provisions of the Loan Documents remain in full force and effect").

Accordingly, that plaintiff may have made a payment each month does not mean that she was current under her Deed of Trust and Note or that the amount owed to cure the default would

---

claim. *See* 2011 WL 1883089, at *6. Moreover, the analysis in *Acuna* is basically conclusory and offers little analysis. *Id.*

13

not have included fees incurred by plaintiff in connection with the default and foreclosure proceedings. Nowhere does plaintiff plead a factual basis to support her allegation that the amount of her default was incorrect. Nor does plaintiff plead *any* factual basis for the expansive statement that plaintiff "lost her home" "because she was given an inaccurate amount of the default …" Opp. at 28. There are no grounds whatsoever in the Amended Complaint from which anyone could reach that conclusion.

Moreover, plaintiff's argument that the delinquency amounts in the Notices of Default were inaccurate does not render the notices invalid for purposes of Wells Fargo's obligations under Paragraph 22 of the Deed of Trust. Indeed, that same paragraph requires Wells Fargo to notify plaintiff of her "right to bring a court action to assert the non-existence of a default or any other defense … to acceleration or sale." Amended Complaint, Ex. 8 at para. 22. Because plaintiff has the express right to challenge the default, she subverts logic by arguing that any dispute as to the precise delinquency amount invalidates the entire Notice of Default. Her argument would make the right to subsequently challenge the default superfluous. Wells Fargo fully complied with Paragraph 22 by notifying plaintiff of Wells Fargo's itemization of her delinquency and the action required to cure such delinquency. Her Deed of Trust requires nothing more. If plaintiff disputes the accuracy of the delinquency, her recourse is a legal challenge of that delinquency not a challenge to the sufficiency of the Notice itself.

In an attempt to support her allegations that the Notices of Default failed to adequately inform her of her right to challenge the default, plaintiff quotes the Deed of Trust and Notices of Default out of context. For example, where the Deed of Trust states that the Notice of Default must inform her of "the right to reinstate after acceleration," she alleges that the Notice of Default only informs her of such a right "if foreclosure is initiated." Opp. at 26. However, the

phrase "right to reinstate after acceleration" simply refers to reinstating the loan, not her right to challenge the default.  The Notice of Default follows this requirement very clearly.  *See* Amended Complaint, Exs. 12, 13 ("You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust <u>after</u> <u>acceleration</u>.") (emphasis added).  Nowhere does the Deed of Trust require that the disclosure regarding her right to challenge the default be modified by the phrase "after acceleration."  It simply requires that Wells Fargo notify her of her right to challenge the default or present any other defense to acceleration or foreclosure sale.  *Id.*, Ex. 8 at para. 22.  And, it does.

Further, plaintiff's argument that the Notice of Default language informing her of her "right to argue that [she] did keep [her] promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that [she] may have" is deficient is nothing but semantics.  Plaintiff argues that such language does not sufficiently notify her of her right to "bring a court action" or "to assert the non-existence of a default or any other defense … to acceleration and sale."  Opp. at 25-26.  Taken as a whole, the "right to argue" and "present … defenses" clearly signify a right to bring legal action.  Plaintiff's argument to the contrary should not be accorded any weight.

Plaintiff has also failed to identify any prejudice resulting from the content of the Notices of Default sufficient to set aside the foreclosure sale.  Indeed, neither of the cases cited by plaintiff supports her argument that less than perfect, word-for-word compliance with the Deed of Trust notice requirements invalidates a foreclosure sale.  In *Bayview Loan Servicing, LLC v. Simmons*, the Supreme Court of Virginia affirmed a judgment against a trustee for its failure to send a pre-acceleration notice, as required by the plaintiff's deed of trust, a failure that ultimately led to a foreclosure sale.  654 S.E.2d 898, 900-02 (Va. 2008).  Plaintiff argues that *Bayview*

15

forestalls any argument that lack of prejudice can defeat a claim to set aside a foreclosure sale. *Bayview* offers no support for plaintiff's argument. In *Bayview*, the court found that the trustee had failed to deliver the required notice and that plaintiff lacked actual knowledge of the pre-acceleration notice. *Id.* at 899-900. Accordingly, the issue was not one of substantial compliance but rather whether plaintiff ever even received notice. Here, there is no dispute that plaintiff received the Notices of Default.

*Washington v. CitiMortgage, Inc.* similarly fails to support plaintiff's argument. There, the Court simply found that the pre-acceleration notices were not a part of the complaint and could not be considered on defendant's motion to dismiss. 2011 WL 1871228, at *7. Indeed, the Court noted that the notices likely satisfied the deed of trust notice requirements and the plaintiff's claim would be dismissed on summary judgment. *Id.* Here, there is no dispute that the Notices of Default are a central part of plaintiff's Complaint and can be considered in adjudicating Wells Fargo's motion – plaintiff has attached them to her Complaint. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (court may consider documents attached to complaint on Rule 12(b)(6) motion); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). As such, *Washington* provides no support for plaintiff's arguments.

That the Notices of Default do not absolutely track the language of the Deed of Trust word for word does not entitle plaintiff to an unwinding of the foreclosure sale. Contrary to her conclusory arguments, the differences between the Notices of Default and Deed of Trust are not substantial. Rather, the Notices of Default, as discussed above, materially informed plaintiff of all of her substantive rights.

Last, plaintiff fails to identify prejudice that resulted from any perceived discrepancies between the Notices of Default and the Deed of Trust.[18] The fact that a foreclosure sale occurred in itself is not prejudice proximately caused by the Notices of Default. Nor can plaintiff plausibly argue that the alleged incorrect delinquency amount could have prejudiced her. If anything, it should have given her even more incentive to exercise her rights to challenge the default. Plaintiff's arguments are nothing more than emotionally-laden red herrings that should be disregarded by the Court. Because the Notices of Default were substantially – if not fully compliant – with the Deed of Trust, she cannot show prejudice, and her foreclosure sale should not be set aside. *See Wood v. MorEquity, Inc.*, 2008 WL 2704310, at *5 (W.D. Va. July 10, 2008) (declining to set aside foreclosure sale where no material prejudice resulted from noncompliance in advertisements of sale); *Virginia Hous. Dev. Auth. v. Fox Run Ltd. P'ship*, 497 S.E.2d 747, 754 (Va. 1998) ("In other matters concerning advertisement of foreclosure sales under deeds of trust, we have held that substantial compliance is sufficient so long as the rights of the parties are not affected in any material way."); *see also In re Harris*, 2002 WL 32152134, at *3 (Bankr. E.D. Va. Dec. 27, 2002) (applying substantial compliance standard to determine sufficiency of notice of default under deed of trust).

---

[18] With respect to the obligation to provide "a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured," *see* Amended Complaint, Ex. 8 at para. 22, both the May 23, 2010 and June 22, 2010 Notices provided the required 30 days. Plaintiff argues that because both May 23, 2010 and June 22, 2010 were Sundays that Wells Fargo's argument fails. Opp. at 25. Regardless of whether the notices were dated on a Sunday, plaintiff, again, does not allege how that fact caused her prejudice, namely the foreclosure of her property.

### IV.     CONCLUSION

For each of the foregoing reasons, defendant Wells Fargo Bank, N.A. respectfully requests that the Court dismiss the First Amended Class Complaint with prejudice and award such other relief as the Court deems just and necessary.

        Respectfully submitted,

        WELLS FARGO BANK, N.A., d/b/a
        WELLS FARGO HOME MORTGAGE

        By its attorneys,

        ***/s/ Terry C. Frank***
        Hunter W. Sims Jr. (VSB No. 09218)
        Terry C. Frank (VSB No. 74890)
        J. Bradley Reaves (VSB No. 71389)
        Kaufman & Canoles, P.C.
        150 W. Main Street, Suite 2100
        Norfolk, VA 23510-1665
        Telephone: (757) 624-3205
        Facsimile: (757) 624-3169
        hwsims@kaufcan.com
        tcfrank@kaufcan.com
        jbreaves@kaufcan.com

        Irene C. Freidel (*pro hac vice*)
        Jennifer J. Nagle (*pro hac vice*)
        K&L GATES LLP
        State Street Financial Center
        One Lincoln Street
        Boston, MA 02111
        Telephone: (617) 261-3100
        Facsimile: (617) 261-3175
        irene.freidel@klgates.com
        jennifer.nagle@klgates.com

July 11, 2011        *Attorneys for Defendant Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Kristi Cahoon Kelly, Esquire (VSB No. 72791)<br>J. Chapman Petersen, Esquire (VSB No. 37225)<br>Scott A. Surovall, Esquire (VSB No. 40278)<br>Surovall Isaacs Petersen & Levy, P.C.<br>4010 University Drive, 2nd Floor<br>Fairfax, VA 22030<br>Telephone: (703) 277-9774<br>Facsimile: (703) 591-9285<br>E-mail: kkelly@siplfirm.com | Susan Mary Rotkis (VSB No. 40693)<br>Consumer Litigation Associates, P.C.<br>12515 Warwick Blvd., Suite 201<br>Newport News, VA 23606<br>Telephone: (757) 930-3660<br>Facsimile: (757) 930-3662<br>E-mail: lenbennett@clalegal.com<br><br>Leonard A. Bennett, Esquire (VSB No. 37523)<br>Consumer Litigation Associates, P.C.<br>12515 Warwick Blvd., Suite 201<br>Newport News, VA 23606<br>Telephone: (757) 930-3660<br>Facsimile: (757) 930-3662<br>E-mail: lenbennett@clalegal.com |

And I will mail copies of the foregoing by first class mail to the following:

| | |
|---|---|
| J. Chapman Petersen, Esquire (VSB No. 37225)<br>Scott A. Surovall, Esquire (VSB No. 40278)<br>Surovall Isaacs Petersen & Levy, P.C.<br>4010 University Drive, 2nd Floor<br>Fairfax, VA 22030<br>Telephone: (703) 277-9774<br>Facsimile: (703) 591-9285<br>E-mail: kkelly@siplfirm.com | Matthew J. Erausquin, Esquire (VSB No. 65434)<br>Consumer Litigation Associates, P.C.<br>1800 Diagnol Road, Suite 600<br>Alexandria, VA 22314<br>Telephone: (703) 273-7777<br>Facsimile: (888) 892-3512<br>E-mail: matt@clalegal.com<br><br>Dale W. Pittman, Esquire (VSB No. 15673)<br>The Law Office of Dale W. Pittman, P.C.<br>The Eliza Spotswood House<br>112-A West Tabb Street<br>Petersburg, VA 23803<br>Telephone: (804) 861-6000<br>Facsimile: (804) 861-3368<br>E-mail: dale@pittmanlawoffice.com |

*/s/ Terry C. Frank*
Terry C. Frank, Esq. (VSB No. 74890)
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone: (757) 624-3205
Facsimile: (757) 624-3169
tcfrank@kaufcan.com

*Attorney for Defendant Wells Fargo Bank, N.A.*

11167494_1.DOC